[No. 3902.]

Buffalo Specialty Company v. Gougar et. al.

1. Contracts—*Construction.* In construing a contract the courts will consider not only the terms employed therein, but the attending circumstances. (528)

2. —— *Public Policy.* The courts are not hasty to declare void a contract deliberately entered into, upon consideration and not under the influence of any misrepresentation or false practice. But where a contract manifests upon its face a tendency to produce a condition prejudicial to the public it will be declared void. (528)

3. Contract Sued Upon. It is stipulated in writing that the plaintiff in error owned the patent charged to have been infringed, and that it secured to the plaintiff in error the exclusive right to manufacture, use

and sell any fluid. or compound for automatically healing punctures in pneumatic tires, and that such patent was valid; and the defendants in error admitted therein that they had infringed the same, and had thereby done the plaintiff in error considerable damage, and stipulated in consequence thereof, if plaintiff in error would forego bringing a suit for damages and an injunction, which was threatened, that defendants in error would not be guilty of future infringements, and bound themselves in the sum of $500.00 to keep such stipulation, and agreed that said sum should be liquidated damages, but should not include any damages that might be suffered for infringements subsequent to the date of the contract. *Held* that, under the admissions in the complaint on demurrer, and assuming everything charged in the complaint as true, said obligation does not manifestly tend to injure the public.* (530, 531)

4. CONSTRUCTION OF CONTRACT. The amount of $500 mentioned in the written obligation as liquidated damages suffered prior to the date thereof was litgated in No. 3717 in this court. *Held* that, there being no provision in said written obligation for the recovery of damages for infringements subsequent to the date thereof, except as follows: "but not for damages suffered subsequent to said date," it did not add to or take from the plaintiff in error any rights or remedies it had under the acts of Congress; and, therefore, the complaint, based upon such written obligation, did not state a cause of action, nor did said written obligation have the effect of depriving the U. S. courts of the exclusive jurisdiction to try causes for infringements of patent rights.* (530-532)

5. JURISDICTION—*Of Subject Matter—Defect Of.* The want of jurisdiction on the ground of subject matter is incurable by laches of the parties, and whenever discovered it is the duty of the court, on suggestion of counsel, or on its own motion, to dismiss the action.* (533)

6. PATENT—*Contract or Stipulation Not to Contest Validity Of.* The provision in the obligation that the defendants in error shall not question the validity of the patents of plaintiff in error, if not enforceable, is insufficient to justify the sustaining of the demurrer on the ground that the written obligation contravenes a sound public policy; but King, J., Cunningham, P. J., and Hurlbut, J., were of the opinion that, inasmuch as the public are interested in the suppression of void patents, which ostensibly create a monopoly in articles extensively used by the public, it was against the policy of the law to give effect to a contract which might protect the false claims of one asserting such patents, and deter manufacturers and dealers from contesting their validity and scope.*

*Syllabi by King, J.

*Error to Denver District Court.* HON. HARRY C. RIDDLE, Judge.

MR. E. G. MANSFIELD, MR. WM. P. KAVANAGH and MR. JOHN HORNE CHILES for plaintiff in error.

MR. R. D. THOMPSON for defendants in error.

BELL, J.

This is the second action brought in the District Court of the City and County of Denver on a written obligation, in the general form of a penal bond, executed by the defendants in error, as co-partners, to The Buffalo Specialty Manufacturing Company, a corporation, of Buffalo, New York, and by it assigned to The Buffalo Specialty Company, a corporation organized and existing under and by virtue of the laws of the State of New York, plaintiff in error herein, and which obligation is in words and figures as follows:

"This agreement made and entered into this 28th day of July, 1903, by and between The Buffalo Specialty Manufacturing Company, a corporation, of Buffalo, New York, party of the first part, and George L. Gougar and William H. Todd, co-partners, doing business under the firm name and style of Gougar & Todd, at Denver, Colorado, parties of the second part.

"Witnesseth, that whereas, the party of the first part is now and for some years past has been the owner of Letters Patent of the United States of America No. 578551, issued on the 9th day of March, 1897, to Charles E. Duryea and his assignee, The Indiana Rubber & Insulated Wire Company, of Marian, Indiana, which letters patent secure to said party of the first part the full, complete and exclusive right to manufacture, use and sell all liquids, semi-liquids, powders or compounds for the purpose of automatically healing or closing punctures in pneumatic tires or articles, and

"Whereas, the said parties of the second part are now and have been for some time past carrying on and conducting a certain bicycle and automobile business in the said City of Denver, and have also been manufacturing and selling certain tire compounds or mixtures known as 'Elastic Tire Restorer' and 'Elastic Solution,' which articles come in competition with the articles manufactured and sold by said party under said, and other patents for the same purpose, thus causing to said first party considerable damage, and

"Whereas, said first party is about to commence suit against said second parties to restrain such infringement, and also to recover said damages, now therefore, for and in consideration that said party shall not bring said suit, and the further consideration of one dollar ($1.00) to them in hand paid by said first party, the receipt of which is hereby acknowledged, said second parties individually and as co-partners do hereby covenant and agree to and with said first party as follows:

"1. That said letters patent and all other letters patent now owned by said first party or in which it has an interest covering the manufacture, use or sale of any fluid, semi-fluid, powder or compound for automatically healing or closing punctures in pneumatic tires are good and valid patents, and that said second parties will not hereafter, directly or indirectly, question either the validity of said patents or the exclusive right of said first party to manufacture, use and sell any and all liquids, semi-liquids, powders or compounds for such use.

"2. That said second parties will on or after the date hereof cease the manufacture, use or sale of any and all fluids, semi-fluids, powders or compounds, or preparations whatsoever to be used for automatically healing or closing punctures or vents in pneumatic tires or articles, and that they will not hereafter during the life of said patents or either of them, individually or as co-partners, make, use or sell or offer for sale or be interested directly or indirectly in the manufacture, use or sale of any fluid, semi-fluid, powder, compound or mixture for automatically healing or closing punctures or vents in pneumatic tires or articles. Except, however, that said second parties have at all times the right to use any and all such articles for such purposes manufactured by the party of the first part.

"3. That if said second parties or either of them shall in any way violate this agreement on their part at any time

during the life of said patents or either of them, that then and in that event they shall pay to the party of the first part as liquidated damages and not as a penalty the sum of five hundred dollars ($500), which amount may be recovered in an action at law hereon, and which amount when so recovered will be in full for all damages sustained by said first party on account of the said second party infringing said letters patent prior to the date hereof, but not for damages suffered subsequent to said date.

"4. That in the event said second parties shall keep and perform on their part all and singular the conditions hereof the said first party does hereby waive all right and claim to damages heretofore suffered by reason of said second party's having infringed said patents.

"In witness whereof, the said parties have hereunto set their hands and seals the day and year first above written.

GOUGAR & TODD              (Seal)
WM. H. TODD                (Seal)
GEORGE L. GOUGAR           (Seal)
BUFFALO SPECIALTY MFG. CO. (Seal)
        E. T. BROWN.
(Seal containing the words 'Buffalo Spe-
        cialty Manufacturing Company' in a
        circle and the words 'Incorporated
        Sept. 12, 1885,' within the circle.)"

It will be observed that in this written obligation the defendants in error expressly admit that the assignor of the plaintiff in error was the owner of the letters patent described therein; that they, the defendants in error, had infringed said letters patent prior to the date of the obligation; that said assignor had suffered considerable damage by reason of such infringements; that it was about to bring suit for a restraining order preventing future infringements and for damages; and to avoid suit, etc., the defendants in error covenanted to desist from future infringements, and in consideration there-

of, said assignor covenanted to waive the infringements committed prior to the date of the written obligation, "but not for damages suffered subsequent to said date."

The plaintiff in error in its complaint avers that the defendants in error continued such infringements from the date of the written obligation until the time of the commencement of this action, to its damage in the sum of $10,000, and further avers the acts of infringement were wanton and malicious, and, therefore, prays for an award of exemplary damages in the sum of $5,000.

The defendants in error demurred to the complaint for many reasons, among which was a lack of jurisdiction of the subject matter, because the obligation contravened a sound public policy, etc. The court sustained the demurrer on the ground that said obligation was against public policy.

In the absence of mistake, fraud, misrepresentation, deceit or other unfair means employed in securing contracts, courts are not hasty in declaring them void when they appear to be deliberately entered into for valuable considerations. However, if a contract on its face manifests a tendency to bring about a condition detrimental to the public weal, then it is the duty of the courts, not for the protection of the participants therein, but in the interest of the public welfare, to declare it void: 23 *Cyc.* 455; *Russell v. Courier P. & P. Co.,* 43 Colo. 325, 95 Pac. 936.

If the tendency of the obligation hereinbefore set forth is obviously detrimental to the public good, then the conclusion and judgment of the District Court should be affirmed. In construing this written obligation, the court should summon to its aid the attending circumstances and give proper weight to the terms employed therein in the light of the surrounding conditions.

It appears from the instrument sued upon, that the plaintiff in error owned letters patent from the United States, No. 578551, and the parties to the written obligation mutually

admit therein that such letters patent secure to the plaintiff in error, by the subsequent assignment thereof, the full, complete and exclusive right to manufacture, use and sell, all liquids, semi-liquids, powders or compounds for the purpose of automatically healing or closing punctures in pneumatic tires or articles. It is further admitted in said written obligation that the defendants in error were conducting a bicycle and automobile business in Denver, Colo., at the date of said obligation, and for a long time prior thereto, and during said time, manufactured and sold a mixture known as "Elastic Tire Restorer" and "Elastic Solution," which articles came in competition with articles manufactured and sold by the predecessor in interest of the plaintiff in error under said letters patent No. 578551, and other patents for the same purpose. It is further admitted in said written obligation that said predecessor in interest was about to commence suit against defendants in error to restrain such infringements and for damages, and in consideration that it would not bring said suit, the defendants in error covenanted and agreed that it owned such letters patent and that they gave it the exclusive right to the manufacture, use or sale of any fluid, semi-fluid, powder or compound for automatically healing or closing punctures in pneumatic tires, that they were good and valid patents, and that they, the defendants in error, would not in the future question their validity or the exclusive right of said predecessor in interest to manufacture, sell and use said fluids and powders for the uses therein mentioned; and for the same consideration, defendants in error agreed to cease the manufacture, sale or use of any of the protected fluids or powders subsequent to the date of said written obligation. Said predecessor in interest agreed to waive the collection of the "considerable damage" suffered while the defendants in error kept the provisions of such obligation on their part. The written obligation gave defendants in error the right to use any and all of said fluids and powders, at any and all times, manufactured by the owner of said letters patent.

: Now, assuming everything in the complaint that is well pleaded, including the admissions in the written obligation, as true, as we must, then does said obligation manifestly tend to injure the public?

This question must be answered in the negative. If the plaintiff in error, in fact, owned, the letters patent and they secured it the exclusive .rights to manufacture. and sell the products described in the written obligation, then the complaint should stand the test of the demurrer on the charge that the obligation contravenes a sound public policy.

Letters patent endow the owner of the invention with the exclusive right to make, use, and vend the patented invention throughout the United States and the territories thereof, during the period for which the patent was granted, and, therefore, such a monopoly cannot be considered *ipso facto* in contravention of a sound public policy: 3 Robinson on Patents, secs. 884 and 890.

We do not wish to be understood as intimating that defendants in error are remediless on the merits of the action by reason of said admissions in the written obligation, or that they may not, on appropriate pleadings and proof, be relieved from the effects thereof.

A very serious question is involved in the first cause of demurrer, questioning the jurisdiction of the District Court to hear and decide the subject matter involved in the controversy. The jurisdiction has been vested in the Federal Courts over all cases arising under the patent laws of the United States: 3 Robinson on Patents, sec. 855; *Read v. Miller,* 3 Fisher 310, s. c., 2 Bissell 12, 12 Fed. Cas. No. 11,610.

Controversies involving the existence and preservation of the monopoly awarded under patents are said to assume any one of three forms: (1) An affirmation and denial as to the legal existence of the monopoly in favor of any person; (2) An affirmation and denial as to the existence of the monopoly in favor of the patentee; (3) An affirmation and denial concerning the character of the matters embraced in

the monopoly. In the first form, it is held that the patentability of the invention is the subject of dispute; in the second, the title of the patentee or his assignee; in the third, the scope of the monopoly, or in other words its existence as to certain instruments or operations claimed by the patentee to lie within it. It is said that none of those controversies can be decided without affecting the monopoly and enforcing, enlarging, or curtailing the rights created and bestowed under the patent laws; while if the patentability and scope of the invention, and the title of the patentee are conceded, there can be no question in relation to the existence and continuance of the monopoly. Cases not presenting one or more of these three forms of controversy are, therefore, not cases arising under the patent laws: 3 Robinson on Patents, sec. 857; *Hyatt v. Ingalls,* 49 Sup'r Ct. (N. Y.) 375-378.

The complaint strictly limits this action to violations of the written obligation sued upon, as far as mere words in pleadings can circumscribe it. However, is not the purpose of the action to recover damages for infringements of United States patents? The acts charged in the complaint unquestionably violate that provision of the written obligation wherein the defendants in error covenant that they will not, subsequent to the date thereof, manufacture, use or sell any of the fluids or powders described therein for automatically healing or closing punctures or vents in penumatic tires or articles. However, the patent rights are alleged in the complaint to secure to the plaintiff in error a monopoly in the manufacture, sale and use of the same fluids, powders and articles, and for the same purposes mentioned in the obligation. The primary purpose of the written obligation appears to be to settle for the infringements prior to the date of the obligation aforesaid and to waive the damages stipulated therein, on condition that the defendants in error would not be guilty of future infringements. There is nothing provided as to the manner or method of estimating the damages or the payment thereof for future infringements. This leaves the written obligation

simply providing that the amount stipulated therein shall be liquidated damages and in full payment for all infringements prior to the date thereof, "but not for damages suffered subsequent to said date." This negative provision in the obligation seems to have been used as a mere precaution to make it clear that the stipulation therein as to the liquidated sum should affect in no wise any damage that might arise for infringements subsequent to the date thereof. It is difficult to see wherein the written obligation can perform any useful function in this action, further than as an instrument of evidence in the nature of a written admission against the interests of the defendants in error. If the action is, indeed, a direct means of recovering for infringements of the patents subsequent to the date of the written obligation, and the written obligation does not materially modify such right of action or add to the legal rights of the plaintiff in error in such recovery, further than it may be used as evidence as aforesaid, then it would seem that this action should be held to be, in fact, based upon an infringement of the patents, rather than a collateral action on the written obligation.

The mere issuance of the patent and the proper assignment thereof confers upon the plaintiff in error the exclusive right to make, use and vend the patented invention throughout the United States and the territories thereof during the life of the patent. The infringement of the patent consists of the very acts of manufacture, use or sale of the invention protected by the patent within the area aforesaid during the life of the patent as described in the contract, and the contract does not seem to prohibit any infringement that the federal law does not likewise prohibit.

In paragraph 1 of the written obligation, the defendants in error, as a consideration that said suit should not be brought, and that they should not be required to pay the liquidated damages expressed therein, confessed in writing that the patents described in the said obligation were good and valid patents for the purposes therein described, and stipulated

that they would not question the validity thereof, and that they would cease the infringements thereafter for the same consideration; and these promises were because of the stipulations aforesaid on the part of the plaintiff in error. Upon the alleged violation of the written obligation by future infringements succeeding the date thereof, plaintiff in error brought a former suit for the recovery of the amount provided for as damages for infringements prior to the date of the obligation, secured the judgment of the District Court therefor, and the record of the proceedings was reviewed in this court, and numbered C. A. 3717.

The want of jurisdiction on the ground of subject matter is incurable by *laches* of the parties, and whenever discovered, it is the duty of the court, on suggestion of counsel or on its own motion, to dismiss the action: 3 Robinson on Patents, sec. 866; *Spring v. Domestic Sewing Mach. Co.*, (C. C.) 13 Fed. Rep. 446; *Teas v. Albright*, (C. C.) 13 Fed. Rep. 406; *Blanchard v. Sprague*, 1 Cliff. 288-299, Fed. Cas. No. 1516; *Creamer v. Bowers*, (C. C.) 30 Fed. Rep. 185.

The rule is laid down in 3 Robinson on Patents, sec. 863, regarding the jurisdiction of the courts in cases involving patents or rights thereunder, as follows:

"Where jurisdiction is exclusively conferred on one tribunal on the ground of subject matter, no other tribunal can in any manner obtain cognizance thereof. Neither the convenience nor the consent of the parties can bestow a power which the law has expressly or impliedly withheld, and though for want of this the interests of parties are imperiled, it is a defect in practical jurisprudence which the law itself and not the courts must remedy. Thus in regard to cases which arise under the patent laws, and over which exclusive jurisdiction has been invested in the federal courts, no state court can under any circumstances assume to exercise its judicial powers. Under whatever guise an action may be brought, if in reality it is a case which puts in issue and requires a judgment upon the existence or continuance of the monopoly cre-

ated by a patent, it is the duty of the local court to dismiss it or provide for its removal to the courts by whom alone such issues can be lawfully determined."

It is apparent that there is no collateral cause of action supportable on any provision of the written obligation, and if the plaintiff in error must rely upon the action upon the collateral written obligation, then it must fail because it does not state facts sufficient to constitute a cause of action. If, upon the other hand, the complaint does state a cause of action for the infringement of letters patent, though formally alleged upon the written obligation, then the case must be dismissed, because every action for the infringement of a patent, whether at law or in equity, must be brought in the Federal courts: 3 Robinson on Patents, sec. 933; U. S. Revised Statutes, sec. 629, cl. 9 (Comp. Statutes 1901, p. 504).

Wherefore, we affirm the judgment of the trial court, but upon different grounds than those stated therein.

*Affirmed.*

KING, J., *specially concurring:*

I concur in affirming the judgment of the District Court, but place my concurrence on the ground that the contract sued on is void because against public policy and in undue restraint of trade.

There is no doubt that the suit is predicated on the contract, and that only, and demands damages for alleged violation of its conditions, whether that violation consists of acts amounting to an infringement of a patent or in the manufacure, use and sale of, or being interested in, articles (possibly not patented or patentable), the manufacture, use and sale of which is inhibited by the agreement, under the pretense that they are covered by letters patent.

By the express terms of the contract, defendants covenanted and agreed that the letters patent named therein, as well as all other patents in which plaintiff had or might have an interest, covering the manufacture, use or sale of any fluid,

semi-fluid, powder or compound for automatically healing or closing punctures in pneumatic tires and articles are good and valid patents, and that defendants would not thereafter, directly or indirectly, question the validity thereof, or the exclusive right of plaintiff to manufacture, use and sell any and all liquids, semi-liquids, powders and compounds for such use; and, further, that defendants would not thereafter, during the life of the patents, "make, use or sell, or offer for sale, or be interested, directly or indirectly, in the manufacture, use or sale of, any fluid, semi-fluid, powder, compound or mixture for automatically healing or closing punctures in pneumatic tires or articles."

It is obvious that if the agreement is enforceable, the defendants are estopped from disputing the validity and scope of the patent named, or of any other patent in which plaintiff may be interested, even although absolutely void or worthless. The public is vitally interested in having worthless patents that ostensibly create a monopoly in articles extensively used by the people, destroyed, and it is against the policy of the law to enforce or give effect to a contract, such as this, which might protect a patentee's claims under such patents, and estop or deter manufacturers and dealers from contesting their validity and scope. The recitals in the contract admitting the validity of the patents and plaintiff's rights thereunder do not preclude the application, in defendants' favor, of the bar raised by their plea that material parts of the contract contravene public policy. The admissions of validity and scope, as well as the agreement not to contest, are a part of the general scheme to stifle competition. The public may be regarded as a party to every suit in which questions of public policy are involved. The right of a litigant to make and rely on that defense, notwithstanding his admissions and stipulations, is not conceded for his protection alone, nor primarily. It is not a private right to the individual only, but is founded on public policy, which is promoted by his making the defense, and contravened by his refusal to make it.

A contract strikingly similar, in many of its aspects, to the one here under discussion was considered by the Supreme Court of the United States in *Pope Mfg. Co. v. Gormully*, 144 U. S. 424, 36 L. Ed. 414, 17 Sup. Ct. 632, and I quote from that opinion in support of my position:

"It is rarely that this court is called upon to consider so unique a contract, and we have found some difficulty in assigning to it its proper place among legal obligations. Its requirement is not merely that the licensee shall refrain during the term of his license from infringing other patents than those which he is expressly authorized to use, but shall forever afterwards, at least during the life of such patents, refrain from importing, making or selling articles covered by them, and from *disputing the validity thereof or plaintiff's title thereto,* and shall afford his moral aid and assistance in securing proper aid and respect for such patents. * * * The *real question is whether the defendant can estop himself from disputing patents which may be wholly void, or to which the plaintiff may have no shadow of title.* * * * It is as important to the public that competition should not be repressed by worthless patents, as that the patentee of a really valuable invention should be protected in his monopoly; and it is a serious question whether public policy permits a man to barter away beforehand his right to defend unjust actions or classes of actions, though, in an individual case, he may doubtless assent that a judgment be rendered against him, even without notice. * * * With regard to all such matters of public policy, it would seem that *no man can bind himself by estoppel not to assert* a right which the law gives him on reasons of public policy." (Italics mine.)

Without deciding also that the contract sued on is absolutely void because it is without limitation as to the space or territory in which defendants obligate themselves not to compete with the plaintiff, I think the presence in the contract of such provision offers an additional and strong reason for hold-

ing the contract void.   Such a provision is often held to avoid
a contract for the reason that it is in restraint of trade.—
*Webb Press Co. v. Bierce,* 116 La. 906, 911, 41 So. 203, 206;
*Seay v. Spratling,* 133 Ga. 27, 65 S. E. 137; *Bishop v. Palmer,*
146 Mass. 469, 16 N. E. 304, 4 Am. St. 339.

Another feature of this contract which should add to its
condemnation is the universality of its claims as to the sub-
stance or substances, ingredients and combinations constitut-
ing the patent.   It is worthy of notice that the alleged viola-
tion of the contract or infringement of the patent by defend-
ants does not consist in manufacturing, using and selling the
same article maufactured by the plaintiff, the use of which
was licensed, but that defendants were manufacturing, using
and selling some article or articles for automatically healing
punctures or vents in pneumatic tires.   If so great a monopoly
has been created by this patent as is claimed under the con-
tract, and which defendants have agreed not to question, then
it may be doubted whether "every miller engaged in the man-
ufacture of wheat flour for domestic use would not be an in-
fringer, and every druggist and grocer engaged in the sale of
such liquid or dry commodities as glycerine, honey, molasses,
wheat flour or cosmetic powders, would not be liable to be
prosecuted for infringing this patent."

It is frequently held that state courts have jurisdiction
to try an action for damages for the violation of a contract
based upon patent rights, although the defense might be the
invalidity of the patents, or that the scope of the patent did
not include the article involved.   There is no doubt of the
right of the state courts to decide the question of law raised
by the demurrer.   Inasmuch as this suit is based on the writ-
ten contract, I therefore prefer to place my concurrence upon
the reason I have stated, rather than upon the jurisdictional
question.

I am authorized to state that Cunningham, P. J., and
Hurlbut, J., join in this special concurrence.

· Morgan, J., concurs in the result reached in both the opinions of Bell, J., and King, J.