JAMES S. SIMS, plaintiff in error, *vs.* SWEPSON H. COX, defendant in error.

Sims gave Cox his obligation, in rescision and compromise of a former contract for the purchase of a plantation, by which he bound himself to deliver to Cox, at the railroad depot, on or before the first day of February, 1869, twenty bales of cotton, in good order, averaging in weight four hundred pounds to the bale; and averaging in quality middling, with the following guarantee: "And the said Sims guarantees to the said Cox, that the said cotton shall be *worth to him* sixteen and one half cents per pound, in the common currency of the country." When the obligation was due, cotton was worth in the market twenty-six and one half cents per pound. Sims tendered to Cox the value of the cotton at sixteen and one half cents per pound. Cox refused to receive the money, and sued for the then market value of the cotton: *Held*, that the sixteen and a half cents per pound was the damage stipulated by the parties, and Cox was not entitled to the market price, as the measure of damages under this contract.

Stipulated damages. Guarantee. Evidence. Before Judge ANDREWS. Oglethorpe Superior Court. October Term, 1869.

Cox sued Sims upon the following obligation : "On or before the first day of February, 1869, I promise to deliver to S. H. Cox, at the Lexington depot, twenty bales of cotton, for value received, said cotton is to average in weight four hundred pounds per bale and to be of middling quality. I guarantee that said cotton shall be worth to him sixteen and a half cents per pound, in the common currency of the country ; this the 2nd of March, 1868.     JAMES S. SIMS."

Plaintiff read in evidence said paper and two others, out of which that grew.    The first was a contract between them made in December, 1865, by which Cox agreed to sell to Sims a certain plantation, and the personalty thereon, and Sims agreed therefor to pay Cox, by the 1st of February, 1867, one hundred bales of middling, ginned and packed cotton, at said depot, of four hundred pounds each, and guaranteed to Cox that they should be worth $100 00 each, in gold, (or, if Sims preferred it, to pay $10,000 00, in specie, in lieu of said cotton,) and another hundred such bales on the 1st of February, 1868, without any guarantee of value, and also pay $700 00, in currency, for interest on $10,000 00 for one year.    The second was a paper reciting that of December, 1865, and rescinding the trade, upon certain terms, part of which were that Sims would deliver to Cox, at said depot, eighty such bales of cotton, seventy of them immediately, and ten within a week ; and, also twenty such bales by the 1st of February, 1869, with the guaranty first aforesaid. It seems that the paper sued on was made in lieu of the last clause of this rescinding contract.

It was admitted that on the 1st of February, 1869, at said depot, Sims tendered Cox $1,320 00, the value of said twenty bales, at sixteen and a half cents per pound, and that Cox refused to accept it.    Plaintiff then offered to show the market value of such cotton, at said time and place.    This was objected to, upon the ground that the damages were fixed by the contract.    The Court overruled the objection and the market value was shown to have been then and there twenty-six and a half cents per pound, in the currency.    Here plaintiff rested his cause.

The defendant offered to show that at the time sixteen and a half cents was agreed upon and was being inserted in the contract, some one asked: "If on the 1st of February, 1869, cotton should be worth more than sixteen and a half cents per pound who would be entitled to the excess?" and that he replied, "I will, of course, for if I am required to guarantee it shall not be worth less, of course I will be entitled to the excess, if it shall be worth more," and that nothing to the contrary was said by either party, at the time. The Court held that this was inadmissible. The verdict was for the plaintiff, for the value of the cotton, at twenty-six and a half cents per pound. The admission of evidence as to the market value of the cotton, and the rejection of the evidence offered by the defendant, are complained of here.

W. G. JOHNSON, for plaintiff in error.

ROBERT TOOMBS, A. T. AKERMAN, MATHEWS & REID, for defendant.

BROWN, C. J.

By the first contract between the parties to this case, Sims agreed to purchase a plantation, with the stock, etc., upon it, from Cox, for one hundred bales of middling cotton, averaging four hundred pounds each, to be delivered at the Lexington depot, by the 1st day of February, 1867, and one hundred bales, averaging four hundred pounds each, by the 1st day of February, 1868, or so soon as it could be put in good merchantable style for market, with interest on ten thousand dollars, for twelve months, in the currency of the country. And, in case of the first hundred bales, it is said in the written contract, that said Sims guarantees to said Cox an average of $100 00, in gold, for each bale of said cotton, with the *privilege* of paying the said Cox ten thousand dollars, in specie, or its equivalent, in *lieu* of the one hundred bales of cotton.

Sims afterwards found himself unable to meet his engagements, probably owing to the great fall in cotton, and the

parties entered into another contract, by which they agreed to rescind the first contract; and Sims was to return the plantation and stock, or very nearly all of it, to Cox, and was to deliver to Cox eighty bales of cotton, averaging four hundred pounds, and averaging in quality middling—seventy to be delivered at once, and the other ten within the present week. And in addition to this, Sims also promised, as part of the consideration for the rescision of the contract, to deliver to Cox, at said depot, on or before the 1st day of February, 1869, nearly one year after the date of said second contract, twenty bales of cotton, in good order, averaging in weight four hundred pounds to the bale, and averaging in quality middling; and said Sims *guaranteed* to said Cox, that said cotton should be *worth to him* sixteen and one half cents per pound, in the common currency of the country.

When the time for payment came, cotton was worth twenty-six and one half cents per pound, in the market. Sims refused to deliver the cotton and tendered to Cox its value, estimated at sixteen and one half cents per pound, in payment of the claim. This Cox refused to receive, and brought this suit for the market value of the cotton, at the time it was due. And the question for adjudication in the Court below was, as to the measure of damages. The Court held, that the value of the cotton at the time it was due, was the amount to which plaintiff was entitled, which the jury found. And this ruling is assigned as error.

Construing the two contracts together, and looking to all the facts and circumstances of this transaction, we think the parties intended to stipulate what should be the measure of damages, in case of the non-delivery of the cotton, or in case it should not be worth sixteen and one half cents per pound when due. Sims had purchased the plantation and stock for two hundred bales of cotton, to be delivered as stipulated in the first contract, and had guaranteed that the first hundred bales should be worth one hundred dollars per bale, in gold, with the privilege to pay that sum, per bale, *in lieu* of the cotton. It is a well-known fact that the price of cotton had declined very rapidly, and Sims, no doubt, found himself

unable to deliver the cotton and make good the guarantee, or to pay the ten thousand dollars in gold. Cox then required one hundred bales of cotton, one half of the whole number agreed upon as the price of the plantation, as a consideration for the rescision of the contract. And, as Sims could pay but eighty bales, he agreed to take them, and give him one year to make the other twenty bales, but required a guarantee from Sims that the cotton on which he gave the indulgence, should be worth to him sixteen and one half cents per pound. In other words, he fixed the price of a rescision of the contract at eighty bales of cotton, paid down, and twenty more to be worth sixteen and one half cents per pound, payable in twelve months thereafter.

We think the just and fair construction of the contract is, that the parties agreed upon eighty bales of cotton to be delivered then, and twenty more, worth sixteen and one half cents per pound, the next February, as full satisfaction to Cox. In case the cotton had been worth only six and a half cents per pound, when due, the measure of damages stipulated for would have been sixteen and one half cents per pound, or ten cents per pound more than market value. On the other hand, as it was worth twenty-six and one half cents, we think sixteen and one half cents, or ten cents less than the market value, was still the measure of damages stipulated by the parties. This was mutual and just. Chipman, on Contracts, lays down the rule, as follows: "If A give B a note for $100 00, payable in wheat, at a future day, at seventy-five cents per bushel, and wheat, on the day of payment, be $1 00 per bushel, A may, at his election pay in wheat, of an average quality, at seventy-five cents per bushel, or pay $100 00 in money.

"*All* agreements to pay in *specific articles* are presumed to be made in favor of the *debtor*, and he may in all cases pay the amount of the debt in money, in lieu of the articles, which by the terms of the contract the creditor had agreed to receive instead of money. Poth. on Obl., No. 497. This case falls within the same principle, and the debtor may pay the money instead of the wheat, for the nature of the contract

is this.    The creditor agreed to receive wheat instead of money, and as the parties concluded that the price of wheat would, at the time of payment, be seventy-five cents per bushel, to avoid any dispute in relation to the price, fixed it in the contract at seventy-five cents per bushel, and if wheat at the time of payment be at fifty cents per bushel, still the debtor may pay in wheat, at seventy-five cents." See Chipman on Contracts, 35 and 36 ; 3, Conn. Reps. 60 ; 5 Wind., 393.

We think this case falls within the rule laid down by this author, and the decisions referred to.

Judgment reversed.