ABRAM B. GOODMAN *et al.,* plaintiffs in error, *vs.* MOSES Y. HENDERSON, defendant in error.

[This case was argued at the last term, and the decision reserved.]

1. A written agreement, "to retire from the business of purchasing, in the Savannah market, green hides, sheep-skins and hides, and skins dried by butchers, forever," and to "use (they and each of them) their influence in favor of" the other party, to whom they transferred their good will, and the good will of each of them, in and to said business, in consideration of one hundred dollars per month for and during the term of two years, and three-eights of one per cent. per pound on all green hides up to thirty thousand pounds, purchased in the Savannah market, is not an illegal contract, as being in general restraint of trade, and therefore contrary to public policy.

2. On proof of loss of the original agreement, and the correctness of a copy, the copy may go to the jury as evidence.

3. The meaning of the words, " in the Savannah market," being in dispute, and ambiguous, it was right to admit parol evidence to explain their true sense as ordinarily used in Savannah—whether limited to the Savannah market-house or the Savannah market in its commercial sense—and on the evidence, the question was properly left to the jury.

4. The damages for violating the contract having been fixed in the agreement at $5,000, it being therein written that the sum was "not to be considered in the nature of a penalty, but as stipulated and liquidated damages,' —and the jury having passed upon the questions of fact, and the law having been ruled substantially correctly this court

will not control the discretion of the presiding judge in overruling the motion for a new trial.

Contracts. Evidence. Damages. Before Judge Tomp-kins. Chatham Superior Court. February Term, 1876.

Reported in the opinion.

Jackson, Lawton & Basinger, for plaintiffs in error.

Hartridge & Chisholm, for defendants.

Jackson, Judge.

This suit was upon a written agreement, executed in duplicate, whereby Goodman and the other defendants below, agreed " to retire from the business of purchasing, in the Savannah market, green hides, sheep-skins and hides, and skins dried by butchers, forever, and that they and each of them will use their influence in favor of said party of the second part, and by this memorandum do transfer to him their good-will and the good-will of each of them in and to said business." In consideration of the premises above set out, the party of the second part agreed to pay Goodman and the others " for and during two years from date, one hundred dollars per month, and three-eighths of one per cent. per pound on all green hides, up to thirty thousand pounds, purchased by him in the Savannah market ; " and it was further stipulated, that either party violating the provisions of the agreement should pay the other five thousand dollars, " not to be considered in the nature of a penalty, but as stipulated and liquidated damages."

The jury, under the charge of the court, found for Henderson $5,000, whereupon Goodman *et al.* moved for a new trial, on various grounds. The court refused to grant it, and they excepted.

1. The main question in the case is, whether or not this contract is in general restraint of trade, and, therefore, void

as against public policy ?  Our Code declares that " contracts in general in restraint of trade "—Code, §2750—cannot be enforced ; and the question has been several times before this court, in respect to what contracts are and what are not in general restraint of trade, and the distinction between contracts in general and those in partial restraint of trade is well settled, we think, in our own books.  This contract was limited to the Savannah market, and the first and main question is, does that limit make it in general restraint, or only in partial restraint, of trade ?  The Code really seems to be, in this respect—in regard to this class of  contracts,— but a re-enactment of the common law.  The principle seems to be, that the restraint of trade must be limited in territory, limitation in time not affecting the validity of the contract.  It may be forever, and still good—Addison on Contracts, 99 ;  2d  Am.  Ed.  Chitty on Contracts,  576. Hitchcock vs. Porter, 8 A. & E., 438, 456 ; 11 M. & W., 652 ; 2 Exch., 611 ;  7 Black ; 344 ;  33 Eng. Common Law, 254 ;  6 Porter, Ind., 204.  But it may not extend everywhere, though limited in time—5 M. & W., 548, 561.  So in our leading case, in 10 *Ga.*, 505, where a hotel building was sold, with the stipulation that the vendee, and those holding under him, should never keep it as a public house, the stipulation was held good, though there was but one other public house in the town of Lawrenceville, and the vendee had opened it to the public—see cases there cited.  So in 39 *Ga.*, 655, the distinction between general and partial restraint of trade is taken, and the contract was upheld.  In the last-named case a grocery was sold, with the contents thereof, on condition that the vendor would not open a similar store in the town of Spring Place until a certain specified time, and would use his influence for the other, the vendee paying a higher price for the groceries on account of the stipulation and good - will.  In the former case, Lumpkin, C. J., says, that " the distinction was early taken, and is established by an unbroken current of authority, English and American, between such stipulations as are in gen

eral restraint of trade, and such as are in restraint of it only as to particular places and persons, or for a limited time; the latter, if founded upon a good and valuable consideration, are valid." So that the court ruled, in 10 *Ga.*, that the only requisition was, that the contract should be founded upon a good and valuable consideration and confined in space. It is true that Judge Lumpkin does use the words, "or for a limited time," but in the very case he was deciding the time was unlimited, and we have shown that the limit as to time makes no difference, if the contract be limited as to space. So in *Mell vs. Mooney*, 30 *Ga.*, 414, the same doctrine was applied in the case of physicians, and in 45 *Ga.*, 319, in the case of schoolmasters. If there ought to be competition and free trade in anything, it should be in doctors and schoolmasters. We hold, therefore, that this contract is good, it being confined to the Savannah market. It was argued that it tended to a monopoly, as the contracting parties were the only active parties engaged in purchasing such hides; but any others, we suggest, could engage, if they wished, and, if prices warranted, they certainly would do so. Besides, it certainly no more tended to monopolize such a trade in Savannah, than the restriction on one of two taverns in the small town of Lawrenceville did to monopolize hotel-keeping there. It was also argued that the business of buying is not such a business as can be sold out, with such a stipulation, even if the agreement be confined to a particular place. Why not? it is as much a trade as selling. People buy in order to sell. These hides were bought with a view to sell and make a profit. The good-will was expressly sold in the business in the Savannah market. Why could not the good-will be transferred as well in the case of customers to sell, as in that of customers to buy? The very same confidence in the person with whom we trade in buying from him, we might well have in selling to him,—confidence in his integrity and fairness; and the recommendation of such a person of another would avail as well in one as in the other case; and good-will, at last, is but such a recom-

mendation to customers, to trade with another, from an old dealer with whom those customers have dealt, and in whom they have confidence. Most trades, and many mercantile pursuits, indeed, almost all, involve barter, exchange—both buying and selling. Shall a party be allowed to sell out his selling, but not his buying, business? Shall it be held legal for him to cut it in two and sell out half, but not the other half? Or, because half his trade consists in buying, shall he not, if a good bargain offers, sell out his business in a particular place and move to another, and get more for it by agreeing to stop business and move away from the old place of business? We think not. We can see no reasonable and fair distinction between transferring a buying and a selling business with the condition not to carry it on in a particular locality. And we find none such in the books. We therefore hold, after much deliberation, and as full an examination of the case and the authorities as we could make, that this contract is legal, and not in such restraint of trade as to make it against public policy to enforce it. We do not say, if we were making the law *de novo*, that we would so make it. It might be well to allow no bargain in restraint of trade, general or partial, to stand; but such is not the law now, and our duty is to declare it as it exists now, and to enforce it as we find it to be.

2. A point was made in regard to the use of the copy contract before the jury after proof of the loss of the original. We think that the evidence of the party and counsel, of the loss of the original, and the exactness of the copy, sufficient to admit the copy to the jury. After the copy was established as a true copy, by sufficient evidence, it was better evidence than recollection of its contents—Code, §3768—yet the contents only proved by parol in the absence of a copy, would have been good—12 *Ga.*, 509; 30 *Ga.*, 546; 36 *Ga.*, 458; 42 *Ga.*, 462.

3. There was a dispute as to the true meaning of the words "in the Savannah market," and testimony was ad

mitted to show the meaning of these words as ordinarily used in Savannah, and the jury was allowed to pass upon the meaning thereof under the evidence. This is excepted to. The point is important, inasmuch as the defendants violated the contract only if the words be considered to embrace all Savannah as the Savannah market, but did not violate it if those words mean the market-house, defendants having bought in Savannah, but not in the market-house. We think that the ordinary signification of the words would mean the entire Savannah market in its commercial sense, otherwise "*house*" would have been added. The best view for the defendants was to treat them as ambiguous, and let the jury pass upon them. They cannot complain—Code, §2757, parts 1 and 2, §§2754, 2755; 46 *Ga.*, 232, 235; *Harris et al. vs. Dubb*, 57 *Ga.*, 77.

4. The consideration to support the contract was ample— one hundred dollars per month for two years, and a per cent on the hides bought. It was also reasonable. Nearly three thousand dollars was actually paid for the good-will and the retirement of the defendants from the business. They violated the agreement; the damages were agreed upon by the parties themselves; they fixed them, not as a penalty, but as *stipulated and liquidated*, and so wrote it down in the agreement; the jury found the sum that they agreed upon, and we think that they found right. Certainly the verdict is sustained by the evidence, is not against law, and it must stand—Code §2940; 33 *Ga.*, 533, 536; 41 *Ga.*, 680; 51 *Ga.*, 519; 53 *Ga.*, 114, 252, 456, 596.

The judgment is affirmed.