## ALLISON *v.* DUNWODY *et al.* (Three cases.)

1. Where the parties to a written contract mutually agree therein that in case one of them fails or refuses to comply with its covenants the other shall retain as liquidated damages a stated sum of money already received by the latter from the former, which sum is reasonable in amount, and it appearing from the terms of the contract as a whole that the damages resulting from a breach thereof were the subject-matter of calculation and adjustment between the parties, and that the sum specified was really intended as compensation and not as a mere penalty, the law will enforce the contract as made.

2. Accordingly, where the owner of land, by a written instrument in the form of a bond, acknowledged the receipt from the obligee therein named of a specified sum, and stipulated that

upon the payment by the latter of another specified sum, within a stated period, the maker would convey to him certain described realty, the instrument containing, however, no promise by the obligee to pay anything, but providing that upon the non-payment of the sum last above referred to at maturity and for ten days thereafter, the bond should be void and the maker should have "the right to re-enter and take possession of the property above described, and the sum paid upon the delivery hereof shall be retained by [the maker] as liquidated damages for the non-compliance by [the obligee] with the terms of this bond,". and it also appearing that the obligee, by an entry upon the bond, agreed "to be bound by every stipulation and clause therein contained:" *Held*, that, upon the refusal of the latter to make the deferred payment within the time limited, neither the maker of the bond nor his assignee could maintain against the obligee an action for the amount of such deferred payment, nor for a balance thereof, where a partial payment had been made upon the same, it not appearing that the obligee, at the time of such refusal, was in possession, or in any manner resisting a re-entry by the maker of the bond.

Argued December 3,—Decided December 17, 1896. ATKINSON, J., being disqualified, Judge BECK, of the Flint circuit, was designated to preside.

Complaint. Before Judge Sweat. Glynn superior court. May term, 1896.

Allison, as transferee of the Brunswick Company, brought three like suits. Defendants filed demurrers which were sustained, and Allison excepted.

The petition in one of the cases alleged: November 1, 1889, the Brunswick Company, a corporation, negotiated with Dunwody for the sale and finally sold him certain real estate described, in the city of Brunswick, for the price of $1,440 to be paid by him to it, $480 cash and $960 within one year from November 6, 1889, with interest; and the $480 cash was duly paid by Dunwody November 1, 1889. November 6, 1889, the sale and the terms thereof were reduced to writing, signed by both parties, as appears by bond for title executed November 6, 1889, by the Brunswick Co., and by Dunwody accepted on November 11, 1889, as appears by his endorsement thereon. Copy is at-

tached. Subsequently, and for a valuable consideration and without notice of any equity between the Brunswick Co. and Dunwody, if there were any, petitioner purchased from it the claim evidenced by said bond and acceptance, and holds and owns the same, together with all the rights the Brunswick Co. had therein and which they would now have had such purchase not been made by petitioner, and the bond and acceptance were duly assigned by the Brunswick Co. to petitioner. Dunwody has failed and refused to pay petitioner the $960, but on November 1, 1890, paid $250 on the indebtedness of $960. So that there is yet due and unpaid petitioner $786.80 balance due upon the purchase price of the lot, besides interest, which Dunwody refuses to pay. The conditions of the attached bond were, that whereas the Brunswick Co. had agreed to convey to Dunwody certain lots, describing them, for the total purchase price of $1,440, of which $480 was paid upon the delivery of the bond, the receipt of which is acknowledged, and the balance, $960, to be paid within one year from November 1, 1889, with interest as specified, Dunwody to go into possession of the property at once and return it for taxes and pay all taxes thereon during the term of the bond and to continue to pay the taxes thereon should he comply with the stipulations of the bond;—upon the payment by Dunwody of said deferred payments as they matured, and of all taxes assessed upon the property, then the Brunswick company should make warranty deed to the property to him; should he fail to pay the deferred payments at maturity and should the same remain unpaid for ten days, then the bond to be void and the Brunswick company to have the right to re-enter and take possession of the property, and the sum paid upon the delivery of the bond to be retained by it as liquidated damages for the non-compliance by Dunwody with the terms of the bond. The acceptance entered upon the bond and signed by Dunwody, contained an agreement "to be bound by every stipulation and clause

therein contained, and that this bond is not to be transferred." By amendment petitioner alleged, that the assignment to him was in writing, on or about March 1, 1894, since which time he has held himself ready and yet does so, able and willing to perform towards Dunwody all the undertakings previously made by the Brunswick Co. and in the bond for titles contained.

The demurrers were upon the following grounds: (1) No cause of action. (2) The bond permits no right of recovery for any amount against defendant, and plaintiff's remedy is the right to re-enter and take possession of the property, and to retain the sum paid upon the delivery of the bond, as liquidated damages. (3) Failure to allege that defendant is in possession of the property, and retains and refuses to deliver the property to plaintiff, and did refuse to deliver it when demand was made upon him at any time subsequent to the day upon which the deferred payment was to be made. (4) Plaintiff fails to allege when the alleged transfer was made to him, and to attach a copy of the transfer, and to allege that the transfer was made in writing and duly executed and delivered to him. (5) He fails to allege that he has a perfect and legal title to the property and that he stands ready to abide by and perform all the conditions required by the Brunswick Company to be done and made, and that he stands ready and desires to perform his part of the contract imposed upon him by the bond, upon the payment of the sums he claims to be due upon the same; and he fails to make profert to defendant of the warranty deed to the property.

*Crovatt & Whitfield*, for plaintiff.

*Atkinson & Dunwody, Brantley & Bennet* and *Harrison & Peeples*, for defendants.

BECK, Judge.

The official report states the facts. The main question in this case is, whether the sum specified in the con-

tract, which is the basis of the plaintiff's action, is a mere penalty or was intended as compensation—"liquidated damages," to use the language of the parties. Considering the entire contract, the unilateral instrument executed by the assignor of plaintiff together with the acceptance by defendant, we unhesitatingly hold the sum specified to be stipulated or liquidated damages. Section 3794 of the Civil Code provides that, "If the parties agree, in their contract, what the damages for a breach shall be, they are said to be liquidated, and unless the agreement violates some principle of law, the parties are bound thereby."

Upon the subject of liquidated damages, the decisions are seemingly, perhaps actually, very conflicting. "Liquidated damages" by construction is made to signify a penalty, and on the other hand, the word "penalty" is sometimes, upon consideration of the combined stipulations, rendered liquidated damages. Bishop, Con. §1452. As is said in Pierce v. Jung, 10 Wis. 25, one class of cases "lean towards treating such provisions as in the nature of penalties, and to do so have sometimes disregarded the positive and explicit language of the parties. Another class of cases, on the other hand, go for upholding contracts as made, treating the parties as equally competent to provide for the amount of damages to be paid, in case of failure to perform, as to determine any other matter contained in them. . . But even the first class of cases concede the power of the parties to liquidate the damages by their agreement in case of a non-performance. And they profess also to go upon the intention of the parties. And, perhaps the only real difference between the two is that the former take greater liberties than the latter with the words of the parties, in determining what the intention is."

Again, in the case of Lea v. Whitaker, 8 L. R. C. P. 70, Keating, J., says, "The cases upon the subject of penalty or liquidated damages are very numerous. The result of them seems to be this, that what the courts look at is the

real intention of the parties as it is to be gathered from the language they have used. No case that I am aware of has decided that, if it be manifest that the parties meant the sum fixed to be liquidated damages, the court will interfere to frustrate that intention."

Much to the same effect as in the two cases thus quoted, is the tenor of the decisions of this court. *Sims* v. *Cox,* 40 *Ga.* 76; *Goodman* v. *Henderson,* 58 *Ga.* 567. And in this last case Justice Jackson lays especial stress upon the fact that "the damages were agreed upon by the parties themselves; they fixed them, not as a penalty, but as *stipulated and liquidated,* and so wrote it down in the agreement." "The language of the instrument itself must of course be primarily looked to and considered, though the use of the words ' penalty ' or ' liquidated damages ' will by no means always be conclusive," is the holding of this court in the case of *Sanders & Ables* v. *Carter,* 91 *Ga.* 450, in which Justice Lumpkin deals with the subject of "penalties" and "liquidated damages" at considerable length. This and the other Georgia decisions upon this subject manifestly lean to that class of cases in which no "greater liberty is taken with the language of the parties" than is necessary to ascertain the true intent of the contract and to prevent the exaction of harsh penalties under the guise of liquidated damages.

From the contract which we have had to construe in this case, it appears that the parties mutually agreed in express terms that, in case one of them should fail or refuse to comply with its covenants, the other should retain as liquidated damages a stated sum of money already received by the latter from the former. The sum which was to be retained upon the happening of the contingency provided for was not unreasonable in amount; and it appearing from the contract as a whole that the damages resulting from a breach thereof were the subject-matter of calculation and adjustment between the parties, and that the sum specified

was not intended as a penalty, but as fixed and settled damages, the law will not frustrate that intention.   On the contrary, it will uphold and enforce the contract as made, thereby giving effect to the intention of the parties to it and recognizing their competency to provide for damages and the amount thereof, if not unreasonable or grossly excessive, in the event of failure to comply with its covenants.

It follows from what we have just said, taken in connection with the principle announced in the second headnote, that the court below did not err in sustaining the demurrers and dismissing plaintiff's actions.

*Judgment in each case affirmed.*