### MARTIN et al. v. LOTT et al.

Under the facts appearing in the record, the amount agreed upon as liquidated damages was not unreasonable; and the agreement, that the sum paid to the vendors for the land should be retained by them as liquidated damages in case of the failure of the purchasers to comply with the terms of the contract of purchase, violating no principle of law, the court should have held the amount paid to be liquidated damages, and therefore should have sustained the demurrer to the petition in which it was sought to recover the amount as money had and received.
FEBRUARY 16, 1916.

Action for money had and received. Before Judge Littlejohn. Lee superior court. October 9, 1914.

L. B. Lott and J. B. Edwards brought their petition against E. B. Martin Sr., W. G. Martin, and M. M. Martin, alleging as follows: The defendants are indebted to them in the sum of $5,000. On the 27th day of February, 1911, the plaintiffs entered into a certain contract with the defendants, under the terms of which the defendants were to sell, for the sum of $69,000, a cer-

tain tract or tracts of land aggregating 3,900 acres; the payment of this sum to be made at stipulated periods. The vendors were to give to the purchasers a bond for title when the title to the property had been approved; and the contract also made provision for the payment of interest on a sum deposited by the purchasers up to November 1, 1911. On the 4th day of March, 1911, the defendants executed a bond for title to the purchasers, in the penal sum of $138,000. Of the purchase-price, $69,000, the sum of $3,000 was paid in cash, and receipt of it was acknowledged, and the remainder was included in the notes of the plaintiffs, as follows:

> One for $ 1,000 due March    27, 1911;
> One for $12,000 due November 1, 1911;
> One for $ 4,625 due November 1, 1912;
> One for $ 4,625 due November 1, 1913;
> One for $ 4,625 due November 1, 1914;
> One for $ 4,625 due November 1, 1915;
> One for $34,500 due November 1, 1914.

The interest on each of these notes was to be paid annually on November 1st, until the entire purchase-price was paid. It was provided in the bond for title, that should the plaintiffs make default in the payment of any one of said notes, or of the interest due at the time the same was to be paid, the vendors might, at their option, declare the entire amount due and proceed forthwith to the collection thereof, "time being the essence of this contract. Possession to be delivered after crops of 1911 have been harvested and payment of all sums due have been made." On the 16th day of November, 1911, the plaintiffs and the defendants entered into a new contract, the defendants having found themselves unable to comply with their agreement as to payment. This new agreement stipulates:

"Whereas the said parties of the second part [the plaintiffs] have been unable to comply with their agreement to purchase [the tract or tracts of land in question] of the first parties, said agreement being evidenced by a certain writing dated February 27th, 1911; and whereas said second parties have paid first parties $1,000 to grant an extension: Now, therefore, on consideration of said payment, said first parties do hereby grant an extension of time to first parties upon the following conditions: The note of second parties for $12,000.00, due November 1st, 1911, is hereby

extended to and is payable October 1st, 1912; the four other notes are likewise extended and to become due on October 1st of each year after the date on which they are now due. The $1,000.00 paid is to go as a credit on the note for $12,000.00. The total amount paid by second parties to date being $5,000.00; and the first parties hereby agree to allow first [second] parties interest on said $5,000.00 from date at 8% per annum in the event of their compliance with this agreement. Time is hereby made of the essence of this contract. The agreement heretofore made between said parties is hereby made a part of this contract where not inconsistent herewith. The amount paid is agreed upon as liquidated damages in the event of non-compliance with the terms and requirements of this contract. . . Said notes to bear interest according to the terms of original agreement after the maturity of each according to this agreement."

The plaintiffs paid the vendors $1,000 in cash (in addition to the $4,000 already paid) to extend the time of the payment of the notes, which $1,000 was to be credited upon one of the notes that had been given. When the period of extension provided for in the contract of November 16, 1911, expired, the plaintiffs were still unable to carry out the terms of their contract, as they could not raise the money to pay the notes as they fell due; and they called upon the vendors to make terms with them; "and they then and there agreed between the said Martins, . . that said Martins would hold said lands intact, and keep the same as they had always kept them, collect all the rents, issues, and profits, and they would hold said lands until either petitioners hereto or the said Martins could sell and dispose of the lands, after which the said Martins would refund to these petitioners the sum of $5,-000.00, which on that date had been paid by these petitioners to the said Martins, with interest thereon from the time they had used the said five thousand dollars. Petitioners would further show that in so far as carrying out the contract of purchase, as aforesaid, of the lands described in said contracts, that the said Martins voluntarily rescinded the contracts, retained possession of the property, and continued to hold and work the same and derive all the benefits from the rents, issues, and profits of said lands; but agreed, as aforesaid, that either the said Martins or these petitioners might sell the lands at any time they could, and

[as] soon as they could sell it that the said Martins would repay to these petitioners said sum of $5,000.00 with interest thereon from November 16th, 1911, as aforesaid." The plaintiffs have never been in possession of the lands and have never collected any rents therefrom, but the vendors have enjoyed all the profits in the lands. It was never contemplated that the $5,000 paid to the vendors should be liquidated damages; no specific damages were discussed or agreed upon or contemplated; and the stipulation in the contract as to the Martins retaining the $5,000 as liquidated damages was intended to operate as a penalty.

This petition was demurred to, and the demurrer was overruled; whereupon the defendants excepted.

*Ware G. Martin,* for plaintiffs in error.

*W. W. Dykes* and *W. T. Lane,* contra.

BECK, J. (After stating the facts.) The court erred in overruling the demurrer to the petition. Section 4390 of the Civil Code reads as follows: "Damages are given as compensation for the injury sustained. If the parties agree, in their contract, what the damages for a breach shall be, they are said to be liquidated; and unless the agreement violates some principle of law, the parties are bound thereby." And section 4391 reads: "Penalties in bonds are not liquidated damages; and even if called such, yet if it appears unreasonable and not so actually intended by the parties, the law will give only the actual damages, and in all cases where the damage is capable of computation, and is not uncertain in its character, such stipulations will be declared to be penalties." In the case of *Allison* v. *Dunwody,* 100 *Ga.* 51 (28 S. E. 651), it was said. "In the case of Lea *v.* Whitaker, 8 L. R. C. P. 70, Keating, J., says: 'The cases upon the subject of penalty or liquidated damages are very numerous. The result of them seems to be this, that what the courts look at is the real intention of the parties as it is to be gathered from the language they have used. No case that I am aware of has decided that, if it be manifest that the parties meant the sum fixed to be liquidated damages, the court will interfere to frustrate that intention.' Much to the same effect as in the two cases thus quoted is the tenor of the decisions of this court. *Sims* v. *Cox,* 40 *Ga.* 76 [20 Am. R. 560]; *Goodman* v. *Henderson,* 58 *Ga.* 567. And in this last case Justice Jackson lays especial stress upon the fact

that 'the damages were agreed upon by the parties themselves; they fixed them, not as a penalty, but as stipulated and liquidated, and so wrote it down in the agreement.' 'The language of the instrument itself must of course be primarily looked to and considered, though the use of the words "penalty" or "liquidated damages" will by no means always be conclusive,' is the holding of this court in the case of *Sanders & Ables* v. *Carter,* 91 *Ga.* 450 [17 S. E. 345], in which Justice Lumpkin deals with the subject of 'penalties' and 'liquidated damages' at considerable length. This and the other Georgia decisions upon this subject manifestly lean to that class of cases in which no 'greater liberty is taken with the language of the parties' than is necessary to ascertain the true intent of the contract and to prevent the exaction of harsh penalties under the guise of liquidated damages." See also the case of *Mayor &c. of Washington* v. *Potomac Engineering &c. Co.,* 132 *Ga.* 849 (65 S. E. 80). From the contract or contracts which we have to construe in the present case it will be seen that the parties agreed in express terms, in case one of them should fail or refuse to comply with its terms, that the sum of money already paid to the defendants would be retained by them as liquidated damages. The sum which was to be retained upon the happening of the contingency provided for does not appear to be unreasonable in amount. The plaintiffs by the extension, for which they paid $1,000, had not only the advantage of an extension of the time, but they had the further consideration of being given an opportunity of selling the lands; and if there had been a rise in the value of the lands, and they could, in the ten or eleven months time of the extension, have sold the lands at an increased value, they could have compelled the vendors to comply with the contract and convey to them or their assignee the property in question. Here was a tract of 3,900 acres, supposedly of the value of $69,000. A slight increase in the value of the lands for the ten or eleven months during which, under the contract last made between the parties, the time of payment of the notes was extended, might have given a large profit to the vendees. At least, the opportunity extended, through the period stated, of finding a purchaser was a legitimate subject of trade. In the petition it is alleged that the vendors kept possession of the lands and enjoyed the rents and profits issuing therefrom; but what these rents and

profits amounted to in value is not stated, and it is not made to appear that they had such value as made the sum of $5,000, agreed upon as liquidated damages, an unreasonable sum. Notwithstanding the allegations in the petition that the sum stipulated as liquidated damages was really intended as a penalty, we think it is for the court to construe the contract; and the court should have held that the amount so stipulated as damages was not unreasonable, and should have enforced the contract as made.

The case of *Allison* v. *Dunwody*, from which we have taken the lengthy quotation appearing above, is on its facts very similar to the instant case. *Judgment reversed. All the Justices concur.*