PATTERSON, Chief Justice,
for the Court:
Terry B. Cheatham and Rhonda Stewart Cheatham, his wife, and General Specialties, Inc., appeal from a decree of the Chancery Court of the First Judicial District of Hinds County whereby Kem Manufacturing Corporation, a Georgia Corporation, was awarded $38,839.92 in damages and granted injunctive relief against appellants.
In July of 1972, Kem entered into a contract with Terry B. Cheatham whereby he was employed as sales representative in a designated territory in Mississippi. The contract provided, among other things, that Cheatham’s full-time services were to be devoted exclusively to the business of his employer, Kem, and provided:
RESTRICTIVE COVENANT. (a) Company is engaged in the business of developing, manufacturing and purchasing sanitary and maintenance chemicals, supplies and equipment (including, but not limited to, soaps, cleaners, detergents, waxes, deodorants, insecticides, disinfectants, industrial cleaning and dishwash-ing compounds, dry cleaning supplies, floor maintenance materials and equipment, and washroom and janitor and san *1087 itary supplies and services), rendering engineering and maintenance services in connection therewith, and marketing such products and services to governmental, institutional, industrial and commercial consumers, throughout North, Central and South America and the Caribbean area. It has built up and established a valuable and extensive trade in its products and services in such territories which, together with Company’s business connections and customers, have been established and maintained at great expense and are of great value to it. By virtue of Agent’s employment by Company, he must have complete and in'timate knowledge of, and will become further familiar with and possessed of, the manner, methods, secrets and confidential information pertaining to such business, and with the names and lists of Company’s customers and clientele, their business requirements, and the amounts paid by them for Company’s products and services; and, through his representation of Company, he will become personally acquainted with the customers, competitors and trade of the Company. Agent agrees that Company would suffer great loss and damage if, during Agent’s employment or upon its termination, he should, for himself or on behalf of any other person, persons, partnership or corporation by whom he may be subsequently employed, solicit orders for sanitary and maintenance chemicals, supplies and equipment, or for engineering and maintenance services in connection therewith, for distribution to governmental, institutional, industrial and commercial consumers; or if he should engage in such business in the territory set forth in sub-Paragraph 4(b) of this employment contract; or if he should disclose any of Company’s methods, secrets or other confidential information. If any of the restrictive convenants (sic) hereinafter set forth should be violated by Agent, Company would suffer irreparable damage, and the resulting damages would be difficult or impossible to measure accurately. Agent further agrees that an injunction and restraining order enforcing such covenant is necessary to afford Company adequate remedy. Therefore, in consideration of the premises and of the mutual promises herein made, and of Agent’s employment for a period of one month or more under the terms of this Agreement, Agent does expressly covenant and agree that, during the term of his employment under this contract, and for a period of two (2) years immediately following the termination of such employment, with or without cause:
(1) He will not, except as authorized by Company, for himself or on behalf of any other person, persons, partnership or corporation, either individually or as a joint venturer or silent partner, employee or stockholder, solicit orders for sanitary and maintenance chemicals, supplies or equipment or for engineering and maintenance services in connection therewith for sale or distribution to consumers, whether governmental, institutional, industrial or commercial, within the territory hereinafter described.
(2) He will not in any way, directly or indirectly, for himself or on behalf of or in conjunction with any other person, persons, partnership or corporation, solicit, divert or take away any of the customers or patronage of Company’s business here-inabove described within the territory hereinafter defined.
(3) He will not, within the territory defined hereinafter, directly or indirectly, for himself or on behalf of others, as an individual on his own account, or as an employee, agent or salesman for any person, partnership, association or corporation, or as a member of any partnership or joint venture, or as an officer, director or shareholder of any corporation, or otherwise, engage in the business, or any phase thereof, of developing manufacturing or purchasing sanitary and maintenance chemicals, supplies and equipment, rendering engineering and maintenance service in cooperation or connection therewith, or marketing such products and services to governmental, institutional, industrial or commercial consumers.
*1088 (4) He will not, within the territory hereinafter defined, directly or indirectly, for himself or on behalf of others, own, manage, control, operate, aid or participate in the ownership, management, operation or control of any business which engages in the business, or any phase thereof, of developing, manufacturing or purchasing sanitary and maintenance chemicals, supplies and equipment, rendering engineering and maintenance services in connection therewith, or marketing such products and services to governmental, institutional, industrial and commercial consumers.
The contract stated that, in event of a breach, as the amount or measure of damages resulting would be difficult to determine and, for the purpose of liquidating the amount of such damages and “not as a penalty” it was agreed that the amount would be fixed at a sum equal to twice the total of the amounts paid Cheatham by Kem during the twelve months immediately preceding termination.
Although it appears that Cheatham’s earnings from his employment by Kem were substantial, in May of 1976 Cheatham and his wife, appellant Rhonda Stewart Cheatham, the latter using her maiden name and placing 100 percent of the stock in her name, organized a corporation called General Specialties, Inc. and began engaging in substantially the same business as Kem. Without the knowledge of Kem, Cheatham began selling as agent for General Specialties to Kern’s customers and in the territory which Kem had allotted to him and in which he was bound to represent Kem full time and exclusively. The evidence shows that Cheatham would sell competing General Specialties products to these customers at prices below those of similar products which it was his duty to sell for Kem. This resulted in profits for the Cheathams and General Specialties and cut into the business of Kem and was in direct violation of covenants assumed by Cheat-ham when he entered into his contract with Kem. The evidence sufficiently established that Cheatham’s wife was aware that these activities were in violation of Cheatham’s contract with Kem and were wrong, and she admitted that it was their intention that Cheatham act for General Specialties although continuing to act, or purport to act, for Kem.
Kem became aware of what was going on, and in February, 1977 notified Cheat-ham to cease the activities in which he was engaged in violation of the contract and his fiduciary duty to Kem. At this time Kem terminated the contract.
Appellants concede that Cheatham’s relationship to Kem was one of trust and confidence, fiduciary in nature, saying:
Appellants are not unmindful of the fact that Terry Cheatham had a fiduciary relationship to the appellee, and of the strong duty owed by a fiduciary to his principal. .
 There was ample testimony before the chancellor justifying his finding that Cheatham’s activities were in direct violation of his contract and his trust relationship with Kem, damaging to Kern’s business and constituted a fraud upon Kem, his employer. Moreover, the chancellor was justified in finding from the evidence that Cheatham’s wife, and the family corporation in which the stock was placed in her name, were privy to Cheatham’s activities and knowingly profited from Cheatham’s fraudulent violation of the fiduciary duty he owed Kem in making Cheatham a salesman for General Specialties’ products in the territory allotted to Cheatham by Kem.
The threshold question raised on appeal is that Kem, a Georgia Corporation, is barred from prosecuting a claim in the courts of Mississippi which arose out of the transaction of business within the state without first obtaining a certificate of authority from the Secretary of State. Mississippi Code Annotated, section 79-3-211 (1972) provides, however, among other things:
Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business in this state, for the purposes of this chapter, by reason of carry *1089 ing on in this state any one or more of the following activities:
(d) Soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts.
(e) Transacting any business in interstate commerce.
The record supports the finding of the chancellor that Kern’s business was exempted under (d) and (e) of the statute, was in interstate commerce and therefore did not fall within the proscribed “transaction of business within the state” so as to require that Kem obtain a certificate from the Secretary of State.
The order form used by Kem (and by Cheatham as its sales representative) provided:
All orders to salesmen are subject to acceptance or rejection by an authorized agent of Kem Manufacturing Corp. at its home office in Tucker, Georgia.
The question has been decided adversely to the contentions of appellants. See Humboldt Foods, Inc. v. Massey, 297 F.Supp. 236 (N.D.Miss.1968); Ross Construction Co. v. U. M. & M. Credit Corp., 214 So.2d 822 (Miss.1968).
Next appellants contend that the provision in the contract providing for liquidated damages is unenforceable under Georgia law, (pointing out that the contract provides that it is to be construed according to the laws of Georgia). We do not agree. In Southeastern Land Fund v. Real Estate World, 237 Ga. 227, 227 S.E.2d 340 (1976), cited by appellants, the Georgia court spoke on the subject of liquidated damages.
Of course, Georgia law also recognizes that the parties may agree in their contract to a sum to liquidate their damages. Code Ann. § 20-1402 provides: “Damages are given as compensation for the injury sustained. If the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated, and unless the agreement violates some principle of law, the parties are bound thereby." (Emphasis supplied.) See also Code Ann. § 20-1403.
[10] In deciding whether a contract provision is enforceable as liquidated damages, the court makes a tripartite inquiry to determine if the following factors aré present:
“First, the injury caused by breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and third, the sum stipulated must be a reasonable pre-esti-mate of the probable loss.” Calamari & Perillo, The Law of Contracts, 367 (1970). See Tuten v. Morgan, 160 Ga. 90, 92, 127 S.E. 143 (1924), and Bernhardt v. Federal Terra Cotta Co., 24 Ga.App. 635, 101 S.E. 588 (1919). See also Martin v. Lott, 144 Ga. 660, 87 S.E. 902 (1915).
[11] Another feature implicit in the concept of liquidated damages in addition to the above factors is that both parties are bound by their agreement. See Code Ann. § 20-1402. See, e. g., Jarro Building Industries Corp. v. Schwartz, 54 Misc.2d 13, 281 N.Y.S.2d 420 (1967). A non-breaching party who has agreed to accept liquidated damages cannot elect after a breach to take actual damages should they prove greater than the sum specified. The breaching party cannot complain that the actual damages are less than those specified as liquidated damages. The liquidated damages become the “maximum as well as the minimum sum that can be collected.” Mayor, etc., of Brunswick v. Aetna Indemnity Co., 4 Ga.App. 722, 727, 62 S.E. 475, 477 (1908). (227 S.E.2d at 343).
In the case before us, appellee sued for liquidated damages or, in the alternative, for actual damages. The chancellor found:
The Court finds that the complainant is entitled to recover from the defendants Terry B. Cheatham, Rhonda Stewart Cheatham and General Specialties, Inc., jointly and severally, the sum of $38,-839.92. Finding that this is the amount of agreed upon liquidated damages for a breach by the defendant, Terry B. Cheat-ham, of his contractual duties to the com *1090 plainant and also finding that the amount of $38,839.92 is within the discernible actual damages proven by the complainant by clear and convincing evidence for breach by Terry B. Cheatham of his fiduciary duties to the complainant, said fraudulent acts being consented to, conspired in and aided and abetted by the defendants, Rhonda Stewart and General Specialties, Inc., the Court finds that upon application of either theory of law, or both to the case, the complainant is to recover from the defendants, Terry B. Cheatham, Rhonda Stewart Cheatham and General Specialties, Inc., jointly and severally, the sum of $38,839.92.
We are unable to say that the evidence in the record does not support the findings of the chancellor or that he was manifestly wrong. It appears that the chancellor in awarding damages, accepted the lesser amount calculated under the liquidated damages formula, and we think he was justified in doing so. The situation reflected by the evidence in the record also supports and warrants the action of the chancellor in enjoining appellants for one year from continuing their activities in the territory formerly allotted to Cheatham as representative of Kem. Other matters assigned for reversal, although ably briefed and vigorously argued, have been considered and are found to be without merit.
The decree appealed from will, therefore, be affirmed.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.