YOUNGBLOOD *et al. vs.* YOUNGBLOOD. administrator.

1. A paper in the form of a deed, and attested as such, conveyed certain realty to a trustee for the use of the grantor's wife for life, and with remainder to the person named as trustee and his children. It also contained the following words: "Also stock of all kinds, household and kitchen furniture, and any other species or kind of property in the possession of said (grantor) at the time of his demise, with all the rights, members and appurtenances to said property belonging or in anywise appertaining." The instrument was delivered and recorded:
*Held,* that the paper was a deed and not a will, and conveyed title *in presenti,* but the possession of the personalty, and perhaps also of the realty, was postponed until the death of the grantor.
2. Where the grantor filed a sworn bill, alleging that he made the instrument as a deed, and that it was procured by fraud, and sought to have it canceled or reformed, after his death his administrator, who was made a party in his stead, was estopped from denying the character of the paper as a deed.
February 24, 1885.

Deeds. Wills. Title. Administrators and Executors. Estoppel. Before Judge PATE. Dooly Superior Court. September Term, 1884.

To the report contained in the decision it is necessary to add only the following: The instrument under consid-

eration was in the general form of a deed, was attested by two witnesses, one of whom was a justice of the peace, and had, as its expressed consideration, the love and affection of the maker to his wife, and $5.00 in hand paid. The body of this instrument was as follows :

" Said Nathan Youngblood hath bargained, sold, granted and conveyed, and by these presents doth bargain, sell, grant and convey unto the said James N. Youngblood, for their use, benefit and advantage, in trust for said Mary Youngblood for life (exempt from the marital rights of Sallie Youngblood, wife of James Youngblood, or any future wife James N. Youngblood may have) for her sole and separate use, and at her decease to James N. Youngblood and his children . . . (certain real estate), . . . . also stock of all kinds, household and kitchen furniture, and every other species or kind of property in the possession of said Nathan Youngblood at the time of his demise, with all the rights, members and appurtenances to said property belonging or in anywise appertaining. To have and to hold the above described property to him, the said James N. Youngblood, in trust for said Mary Youngblood, and at her demise for James N. Youngblood and his children, as above specified, forever, free from the debts, liabilities, obligations and contracts of the said James N. Youngblood or his children."

KIBBEE & MARTIN, for plaintiffs in error.

C. C. DUNCAN; J. L. TOOLE; W. A. HAWKINS, for defendant.

JACKSON, Chief Justice.

This bill was brought by Nathan Youngblood in his lifetime against Sallie Youngblood and her infant child, Jimmy, the said Sallie being the wife of James Youngblood, son of complainant, and Jimmy, his granddaughter, to reform or cancel a deed of trust made by him to James, in trust for the wife of complainant during life, and remainder to James and his children, excluding Sallie, James' wife, to enjoin them from disposing of the land conveyed in said deed, and to cancel it because it was obtained by the said James's fraud and that of his wife, then living with him, complainant, his mind being imbecile and incapable of

making the deed, or to reform it so as to reserve a life estate in the land. A cross-bill was filed in the form of an answer, setting up certain equities, to the effect that respondent's child, Jimmy, for whom she answers as guardian, is entitled to part of the rents, issue and profits of the land, and both entitled to certain personalty which has been used by complainant since the death of James, her husband. Nathan Youngblood having died before the hearing, John Youngblood, his administrator, was made party complainant. On the hearing, the cross-bill was dismissed; the court ruled that the deed was testamentary, and, therefore, a will, and a verdict and decree was rendered in favor of the administrator and against Jimmy's interest in the land. Jimmy is the only living *cestuis que trust* under the deed, being the only surviving child of James, and her father and grandfather both being dead, she appearing by a guardian *ad litem* So that, when the court ruled that the deed was testamentary, her right was gone.

1. Therefore the only questions are, first, is the deed testamentary? and secondly, is not the administrator estopped from so treating it, or setting up the ground that it is, as the bill sworn to by his intestate admits it to be, a deed, and prays that it be cancelled because fraudulently procured by James and his wife, and failing in that, that it be reformed so as to give him clearly a life estate therein? In our judgment, the paper is a deed. It passes title to James in trust at once, and the only thing in it looking like a will in the slightest particular is this language in respect to personalty conveyed in the same deed :

" Also stock of all kinds, household and kitchen furniture, and any other species or kind of property in the possession of said Nathan Youngblood, at the time of his demise, with all the rights, members and appurtenances to said property belonging or in anywise appertaining."

It is certain that these words restricted the use and possession of the personalty until the grantor's death. because

his death must occur to ascertain that personalty. It may be, too, that a life usufruct was also reserved to the grantor in the realty, by a fair construction of those words; but his life interest had not been interrupted by the plaintiffs in error, but he had, without interruption or question, enjoyed land and all up to his death; and being now dead, that question ceases to be of consequence. The title passed when the deed was delivered and recorded, *in presenti*, and all that the words can be construed to effect is the time of enjoyment by the *cestuis qui trust.* The title was put in the trustee; but the enjoyment of its fruits was left in the grantor till his death, and then to the *cestuis qui trust.* This is the extent to which the legal effect of the words could go if delivery of the land had not been given to James and he had not died possessed thereof. *Johnson vs. Hines*, 31 *Ga.*, 720; *Dismukes, adm'r, vs. Parrott*, 56 *Ga.*, 513. In the first of these cases, the words are: " I do give, grant and convey" (certain slaves by name.) In the next clause, " To have and to hold after my death the aforesaid property," and these last words were construed to postpone the possession and enjoyment; the first, to convey the title *in presenti*. In the other, the words are, " has given and granted, and does by these presents give and grant unto said Mary Jane Parrott all that tract of land constituting his residence in said county. To have and to hold the aforesaid premises after his death during her natural life. The said Wm. H. Dismukes reserves the right of controlling the premises as long as he lives." The instrument was construed to be a deed, the doubt being solved in favor of the deed; because it was in form a deed, and could have no legal effect as a will for want of the necessary witnesses. The language in both cases is stronger than in the case at bar to make the papers testamentary, yet both were held deeds. The conveyance here, as in the 55th *Ga.*, is only operative as a deed; its form is a deed, and as a will it is nothing.

2. But even if this were not so, it seems clear that com-

plainant is estopped from denying its character as a deed by his sworn admission *in judicio*; that he made it as a deed, and prayed to cancel the deed, because of his imbecility and the fraud of James Youngblood and his wife in procuring the deed, or if that could not be done, then to reform it as a deed, and give him a life usufruct therein. Code, §3753. The administrator, of course, is bound by such admissions of his intestate who made the admission in the sworn bill, wherein he represents the intestate by being made a party after the death of the intestate. Especially should this sworn bill work an estoppel where the intention of the maker of the instrument is at last the thing which makes the instrument a deed or a will. He swears *in judicio* he intended to make a deed, but was imposed upon to make this one, or to make it as it is. He intended it to pass title *in presenti;* otherwise it needed no cancellation or reformation.

Also see 29 *Ga.*, 677; 32 *Id.*, 589; 13 *Id.*, 515; 22 *Id.*, 491, 472, 460; 3 *Id.*, 460; 6 *Id.*, 515.

Judgment reversed.