## LYDIA PINKHAM MEDICINE CO. *et al. v.* GIBBS *et al.*

1. It was not erroneous to treat as a part of the evidence in a case which had been tried admissions made in the plaintiffs' petition and to require the same to be incorporated in the brief of evidence, though they had not been formally tendered in evidence by the opposite side. This is true notwithstanding the fact that the plaintiffs by amendment struck these allegations from their petition, the amendment not having been made until after the evidence had been closed and the argument of the case upon its merits was being had.
2. Where a witness has been examined touching transactions had with a deceased person, it is not error for the court to allow opposite counsel to cross-examine the witness in regard to the same subject-matter, there being no motion to withdraw any of the testimony given by the witness on the direct examination.
3. An amendment to a petition which alleges simply that certain mortgages were made to the relatives of an insolvent mortgagor for the purpose of hindering and delaying his creditors, without alleging any facts except those of insolvency and relationship to show that the mortgagees had notice or reasonable grounds to suspect that the mortgages were made for such purpose, presents no issue upon which a court or jury could pass, and it was not error to refuse to allow it.
4. Where the controlling issue in a case was one of the delivery of certain mortgages and transfers of notes and accounts by a debtor to certain of his creditors, and it was agreed by counsel for both sides that, under the evidence, this was a question of law for the court to decide and that he should accordingly direct a verdict, there being evidence to sustain the conclusion that there was such a delivery of the papers in question and no evidence to the contrary, it was not error for the court to direct a verdict accordingly.

Argued May 24, — Decided July 20, 1899.

. Equitable petition. Before Judge Lumpkin. Fulton superior court. September term, 1898.

*Mayson & Hill* and *Simmons & Corrigan,* for plaintiffs.
*Culberson & Willingham* and *Payne & Tye,* for defendants.

SIMMONS, C. J. The Gibbs Drug Company was, according to the record, in failing circumstances. Gibbs, the proprietor, undertook to prefer certain of his creditors by executing mortgages and transferring his notes and assigning his accounts to them. The assignment of the accounts was in writing and pasted in the front of the ledger, and stated that all of the accounts in that book, from the first to the last page, inclusive, were assigned to these creditors. At the time the mortgages were

executed, the notes transferred and the accounts assigned, Culberson and Blalock were present as attorneys representing themselves for a claim they had against Gibbs, and also representing others of the preferred creditors. When the papers were all executed, one of the attorneys told Gibbs to place them in his safe and to collect the money on the notes and accounts and keep it separate for the benefit of the preferred creditors. This Gibbs agreed to do. He did collect some money on the accounts before the proceedings hereinafter mentioned took place, and kept such money separate from his other property. Certain unsecured creditors filed their equitable petition against Gibbs and the secured creditors, wherein they alleged that Gibbs, the sole owner and proprieter of the Gibbs Drug Co., was indebted to them in a certain amount; that their debts were due, and that demand for payment had been made and refused; that Gibbs was insolvent; that his property consisted almost entirely of the wholesale drug business and of the notes and accounts which were due him by his customers; that he had executed and delivered to certain persons mortgages of different amounts; that these mortgages covered the whole stock of goods; that one of the mortgages was made to secure the father-in-law of Gibbs as an individual and another to secure him as president of a bank; that another was to secure the firm of Culberson & Blalock, and that the latter was the brother-in-law of Gibbs; that Gibbs had also assigned to these parties open accounts and notes "to a large extent." They further alleged that "to allow said mortgages to proceed in a speedy foreclosure would result in great injury to all the other creditors of the said Gibbs, and in equity and good conscience the assets covered by the said mortgages should be taken charge of and the validity of said mortgages investigated by a court of equity." They alleged further "that the mortgages given, . . together with the open accounts and notes, [would] more than satisfy the mortgages"; that the surplus funds over and above the amount of the mortgages, if the mortgages were valid, should be held up by a court of equity in the interest of the unsecured creditors. They further alleged that Gibbs had assigned all of his assets to the parties aforesaid, either by mort-

gages or by the transfer of open accounts and notes. They attacked the assignment of the notes and open accounts, on the ground that it did not comply with the law in regard to the manner of making assignments to preferred creditors, in that certain prescribed formalities were not observed. They prayed for a receiver to take charge of the assets. It seems from the record that the receiver was appointed by consent of all the parties, and that he took charge of the assets, collected the notes and accounts as far as possible, and sold the goods. After paying expenses, he reported to the court that he had in his hands for distribution a certain amount. The case was then tried on the bill and answer and the evidence submitted by the parties. At the conclusion of the evidence, counsel for the plaintiffs requested the court to direct a verdict in favor of the plaintiffs, on the ground, principally, that there was no proof of the delivery of the mortgages and assignments. Counsel for defendants likewise requested the direction of a verdict, insisting that there was conclusive and uncontradicted proof of delivery, and that the verdict should be directed in favor of the defendants. The court inquired of the counsel if there was any issue of fact which they wished submitted to the jury, and whether the jury should not pass upon the question of delivery. In reply, each side insisted that the court should direct a verdict in its favor. . The court then directed a verdict for the defendants. The plaintiffs made a motion for a new trial, which was overruled by the court. The plaintiffs excepted.

1. It appears that, in the argument before the lower court on the question of the proof of delivery of the mortgages and assignments, the defendants relied upon the admissions made in the original petition as to the execution and delivery of these instruments. The plaintiffs then amended their petition by striking out these admissions. Defendants, after the amendment was made, insisted that the admissions should still be considered as evidence. When the plaintiffs presented to the judge their brief of evidence and motion for a new trial, he ordered them to put in the brief of evidence the admissions made in the original petition. In their bill of exceptions the plaintiffs except to this order of the judge, contending that

after the admissions had been stricken they could no longer be used as evidence, and that the judge erred in compelling them to incorporate the admissions in the brief. These admissions were made in a sworn equitable petition, and upon them, as admissions in judicio, the defendants and the court had acted. Section 5188 of the Civil Code declares: "Without offering the same in evidence, either party may avail himself of allegations or admissions made in the pleadings of the other." Then the question arises, can the complainant, where the other party, before the jury or in his argument to the court, insists upon admissions made in the petition, strike out the admissions and thereby deprive the defendant of the use of them? We think that his striking them does not so result. While a plaintiff can amend his pleadings at any time, he can not, in our opinion, deprive the defendant of the advantage of any admissions that may have been made in the original petition, although the amendment may strike them from the petition. If the plaintiff upon the witness-stand should make admissions under oath, material to the issues upon trial, it might as well be claimed that when the other party sought to take advantage of them, the plaintiff could withdraw them. Admissions in a sworn petition and admissions on the witness-stand are both in judicio, and can not, in our opinion, be withdrawn so as to deprive the other party of the benefit of them. Section 5056 of the Civil Code expressly declares this to be the rule with regard to the sworn answer of a defendant. If this be true as to the defendant's answer, why should it not apply, under our system, to the sworn admissions made in the petition? It may be replied that this rule was established because of the fact that the plaintiff sought discovery from the defendant, and that therefore, after the defendant had made admissions in his answer, he should not be allowed to withdraw them. This may have been the reason for the adoption of the rule, but under our system it can not change the principle. In the case of the sworn answer of the defendant, he is compelled under the law to make answer under oath. In case of the sworn petition the plaintiff voluntarily makes the admissions, and should, in our opinion, be bound by them although he may strike them from the petition by amendment.

2. Gibbs was introduced as a witness by the plaintiffs, and was by them examined with reference to the transactions between him and Blalock, who had died. When the defendants undertook to cross-examine Gibbs on the same subject, the plaintiffs objected on the ground that Blalock was dead and evidence of transactions had with him was not admissible under the statute. The court overruled the objections to this evidence, and did so, we think, correctly. While the plaintiffs may properly have objected, and had excluded any testimony of Gibbs as to these transactions, had Gibbs been introduced and questioned touching these matters by the defendants, we think that when the plaintiffs had themselves introduced him as a witness and first examined him as to these transactions, they could not legally object to his being cross-examined by the defendants in regard to the same matters. The examination by the plaintiffs as to these transactions with Blalock amounted to a waiver of his incompetency. Had the plaintiffs sought to strike all his testimony, on direct and cross-examinations, the question presented would have been a different one.

3. The plaintiffs sought to amend their petition by alleging that Gibbs was the son-in-law of the largest mortgagee and brother-in-law of another, and that he had made a mortgage to himself as administrator of his brother; that he was insolvent at the time of making these mortgages; that they were made for the purpose of hindering or delaying his other creditors, and that the defendants had reasonable grounds to suspect this illegal intention from the facts alleged. When this amendment was presented Gibbs withdrew from participation in the fund then in court the mortgage made to himself as administrator. After this had been done, the trial judge refused to allow the amendment. Exception was taken to this ruling. We think the amendment presented no issue upon which the court or jury could have passed had it been allowed. The original petition made the same charges except as to the mortgages having been made with intention to delay creditors. The fact that a man in an insolvent condition makes a mortgage to a relative does not render this act illegal, even though the mortgagor intended to delay or defraud his

other creditors, nor does it come within our statute setting aside conveyances made to delay or defraud creditors, unless the parties taking had notice or reasonable grounds to suspect the purpose for which it was made. This amendment alleges that "from the facts above stated" the mortgagees had reasonable grounds to suspect the purpose of the mortgagor to delay or defraud his other creditors, but it states no facts as constituting such grounds of suspicion, except that Gibbs was insolvent and was related to the mortgagees and that these facts were known to the latter. There was no attack made on the claims of the mortgagees against Gibbs, nor was there any allegation of a fraudulent intent upon the part of the mortgagees in taking the mortgages. As far as the facts alleged in this amendment are concerned, this could have been a perfectly legitimate transaction on the part of the mortgagees and without their having any reasonable grounds to suspect that Gibbs's purpose was to delay or defraud his creditors. The defendants could form no issue upon any of the facts alleged concerning the mortgagees, but could still consistently claim that the mortgages were valid and binding. There was, therefore, no error in rejecting this amendment.

4. The principal questions discussed in the argument here were, as to whether the mortgages and assignments involved in this case had been delivered by Gibbs, and whether the court was right in directing a verdict for the defendants upon this issue. The only evidence as to the delivery, except the admissions made in the original petition, was introduced by the plaintiffs. They introduced Gibbs as a witness, and he testified that he had executed the mortgages and assignments; that Culberson and Blalock were present; that when he had executed the assignments he then, acting under the advice of Blalock, pasted them in the front of the ledger and took charge of the assignments and of the book for the benefit of the creditors so preferred. He further testified that, acting under the same advice, he held certain money, collected on the accounts between the time of the execution of the assignments and the time of placing the property in the hands of the receiver, as a separate fund for the benefit of the mortgage-creditors, holding

it in the same manner as the books and accounts and keeping it with them. No other witness was introduced to testify as to the execution or delivery of the papers, and there was, therefore, no conflict in the evidence on this point. Did Gibbs's evidence show a delivery of the instruments? In deciding this question it must be remembered that delivery need not be actual. When one person makes a mortgage or an assignment to another, formal manual delivery is not necessary. The delivery may be constructive, and in such case the intention of the parties will govern. The true test as to whether there has been a constructive delivery is the intention of the parties. If there was an intention that the contract should be considered closed and the mortgagees in possession through Gibbs as their agent, the delivery was complete although the papers were not actually handed to Blalock by Gibbs. The evidence is clear that he considered the delivery complete, for it shows that he pasted the assignment in the front of the ledger, acting on the advice of Blalock, and kept the money collected on the accounts as a separate fund for the benefit of the assignees, keeping for their benefit the books and papers also. It is shown without contradiction that Gibbs believed that Blalock, as the attorney of the assignees or mortgagees, was in constructive possession, and he acted on this belief by keeping for them all money collected subsequently on the assigned accounts. The assignees rely upon this as a delivery, and we think that the evidence shows that delivery was in fact made. It is true that the question of delivery is generally one for the jury to determine, but under the peculiar facts of this case we think the court was right in directing the verdict. The plaintiffs contended that Gibbs's evidence showed that there had been no delivery; the defendants claimed that the same evidence showed conclusively that there had been a delivery. Each side asked the court to direct a verdict in its favor. The court asked if there was any issue of fact either side wished submitted to the jury. In effect each side replied that there was no question of fact for the jury, but that it was a question of law, each asking the direction of a verdict in its favor. The court, construing the law as we have .

done and thinking the evidence showed a delivery, directed a verdict in favor of the defendants, the mortgagees. In so doing the court did not err. The evidence of Gibbs showed that there had been a delivery, and the court acted also on the admissions of delivery, made in the original petition of the plaintiffs. It was urged here that there could have been no delivery because none of the mortgagees were present except Culberson and Blalock. On this point the evidence shows that Blalock was general attorney for one of the mortgagees, authorized to represent him in Atlanta, where this assignment was made. If this creditor was represented in the matter by his attorney and afterward accepted the mortgage and assignment taken in his behalf, the delivery to the agent was a delivery to the principal. The delivery to Blalock and to Culberson & Blalock can not be questioned on this ground, as they were present and accepted for themselves. They also accepted for the other mortgagees or assignees, and, while it is not shown that any authority had been given them to accept, the mortgagees and assignees afterward accepted the conveyances and ratified the acts of the attorneys in accepting for them. In the case of *Lampkin* v. *Bank*, 96 *Ga.* 487, this court held: "Where a mortgage in favor of an absent person was executed and delivered to an attorney at law, who had at the time no authority to act as agent of the absentee in accepting a delivery of the mortgage, the latter not even then knowing of any intention on the part of the mortgagor to execute the mortgage, if such absentee afterwards accepted the mortgage, he thereby ratified the act of the attorney in receiving it." See also *Jones* v. *Howard*, 99 *Ga.* 451.

*Judgment affirmed. All the Justices concurring.*