## SEAY *v.* SPRATLING.

1. An agreement, without limitation as to space or territory, not to carry on a particular trade or business, such trade being in itself lawful, is unenforceable, as being against the policy of the law.
2. It was error to grant an injunction having the effect of enforcing a contract embodying such an agreement.

Argued November 14, 1908.—Decided June 30, 1909.

Injunction. Before Judge Ellis. Fulton superior court. October 30, 1908.

Cited by counsel (beside authorities cited in the opinion): Civil Code, §§3668, 3672-3675; 69 *Ga.* 656; 112 *Ga.* 498; 9 Cyc. 525 et seq.; Clark on Contracts, 447, 449, 450, 453; 146 Mass. 469 (16 N. E. 299, 4 Am. St. R. 339); 193 Mass. 351; 97 Ind. 66 (49 Am. R. 427); 165 N. Y. 551; 65 App. Div. (N. Y.) 276; 116 Fed. 310; 120 Fed. 418; 22 *Ga.* 541; 15 Am. R. 152.

*Robert P. Jones,* for plaintiff in error .

*Jackson & Orme,* contra.

BECK, J. The Warren Manufacturing Company, a corporation, was originally organized and formerly did business under the name of "Southern Suspender Works," its name having been changed by an order of the superior court of Fulton county, Georgia, upon proper application made therefor in January, 1908. Under both the old and new name the company has been and now is engaged in the manufacture and sale of suspenders, garters, supporters, neckwear and other articles of clothing in the States of Georgia, Florida, Alabama, Mississippi, Louisiana, Texas, North Carolina, South Carolina, Tennessee, and Oklahoma. G. W. Seay was president of the company under its former name, and so continued to be under its present name, until, on August 20, 1908, he sold out his interest, consisting of seventy-four shares of stock, to E. J. Spratling. The contract of sale executed by Seay stipulates as follows: "That whereas the said G. W. Seay is the owner of

seventy-four shares of stock of the Warren Manufacturing Co., a corporation of said State and County, and is the president of said Company; and whereas the said E. J. Spratling has offered to pay to the said G. W. Seay the sum of thirty-five hundred ($3,500.00) dollars for said seventy-four shares of stock of the Warren Manufacturing Co., providing said G. W. Seay will tender his resignation as president of the said Warren Manufacturing Co. to said company, and agree to neither directly nor indirectly, as an individual, member of a firm, stockholder in a corporation, or as an employee of an individual, firm, or corporation, engage or take part in any line of business, either selling or manufacturing, similar or like that now done by the Warren Manufacturing Co., which said offer the said G. W. Seay has accepted; now therefore, for and in consideration of the premises and the sum of thirty-five hundred ($3,500.00) dollars the purchase-price of said stock, the receipt of which is hereby acknowledged, said G. W. Seay does hereby agree and bind himself for a period of two years, beginning the 20th day of August, 1908, and ending the 20th day of August, 1910, neither directly nor indirectly, as an individual, member of a firm, stockholder in a corporation, or as the employee of an individual, firm, or corporation, to engage or take part in any line of business, either selling or manufacturing, similar or like that now or heretofore done by the Warren Manufacturing Company."

In the following month (September 29, 1908) G. W. Seay, together with S. J. Elder and A. L. Credelle, filed their petition in the superior court of Fulton county, asking to be incorporated under the name of the "Southern Suspender & Neckwear Co.," at 54 and 56 West Mitchell St. in the City of Atlanta, adjacent to the place of business of the Warren Manufacturing Co., and Seay displayed a sign reading, "Southern Suspender & Neckwear Company, G. W. Seay, President," and notifying the public that said corporation would be ready for business on and after the 15th day of October, 1908. On October 7 Spratling filed an equitable petition asking that Seay be restrained from becoming interested in the proposed corporation or in any other manner violating any of the terms of his contract with Spratling, as set forth above. The defendant demurred. Upon hearing the evidence the judge granted an order restraining the defendant, "individually and in

connection with any other individual, firm, or corporation, from beginning, maintaining, or operating a rival business to that of the plaintiff within the State of Georgia; that is to say, from doing within the State of Georgia, until a final decree is made in this case, that which he contracted not to do, as set out in the contract attached to the original petition." To this order the defendant excepted.

Our Civil Code, §3668, declares that "contracts in general in restraint of trade" can not be enforced. In the case of *Goodman* v. *Henderson, 58 Ga.* 567, it is said that "The principle seems to be, that the restraint of trade must be limited in territory, limitation in time not affecting the validity of the contract. . . So that the court ruled, in 10 *Ga.* [*Holmes* v. *Martin*, p. 503], that the only requisition was, that the contract should be founded upon a good and valuable consideration and confined in space. It is true that Judge Lumpkin does use the words, 'or for a limited time,' but in the very case he was deciding the time was unlimited, and we have shown that the limit as to time makes no difference if the contract be limited as to space." The opinion from which this excerpt was taken was a deliverance of this court in a case where the restraint of trade as contained in the contract was not general, and the contract was upheld as valid; but the doctrine announced is distinctly recognized in numerous decisions of this court. In the case of *Holmes* v. *Martin,* supra, Judge Lumpkin, speaking for the court, said: "But the distinction was early taken, and is established by an unbroken current of authority, English and American, between such stipulations as are in general restraint of trade, and such as are in restraint of it only as to particular places and persons, or for a limited time. The latter, if founded upon a good and valuable consideration, are valid, while the former are universally prohibited." The current of authority to which the learned Judge referred has not remained undisturbed, but in this State there is no decision questioning the soundness of the holding that stipulations in contracts which are in general restraint of trade are unenforceable. The contract under consideration in the case of *Bullock* v. *Johnson,* 110 *Ga.* 486 (35 S. E. 703), was limited in its operation to a period of five years, but the contract as originally executed was unlimited as to territory; and in speaking of this contract, Justice Fish, de-

livering the opinion, said: "The contract as originally executed, being unlimited as to territory in which Bullock was restrained from carrying on the produce business, was in general restraint of trade, and therefore void." "In this country, the tendency of the modern cases is to support a restraint, although unlimited in space, provided it is reasonably necessary for the protection of the promisee." Clark on Contracts, 309. Numerous decisions are cited to support this statement in the text, and the reason for the modification of the old rule is cogently supported by considerations of the changed circumstances and conditions of trade and commerce and improvement in the facilities for trade existing through almost unlimited territory. But the fact that the principle which we are announcing in this decision is found in our code and the rule of *stare decisis* keep us in the old current, however much a larger view of public policy might show a modification of the rule to be desirable. Whenever a subject is clearly covered by provisions of the code, questions of public policy and the policy of the law are to be determined by these provisions.

Reference to the terms of the contract which we have under consideration in this case clearly shows that the stipulations contained therein, restraining the plaintiff in error from engaging in the trade or business described, are, as to space, general and unlimited; and that being true, the contract falls within the inhibition of the statute against contracts in general in restraint of trade, and the contract is unenforceable. The injunction sought, which has the effect of upholding this invalid contract, should not have been granted.

Counsel for the defendant in error insists that the contract is susceptible of such a construction as to render it not obnoxious to the statute. We do not think so; the only way in which the contract can be rendered valid and free from repugnance to the provisions of our law is to hold that the stipulations in restraint of trade contained in the contract are limited as to territory. But this would not be the interpretation or the construction of the contract which we find in the record, but would be reformation of the contract,—a reading into it of stipulations which the parties did not insert and apparently did not intend to insert.

Having held that the contract involved in this case was invalid and unenforceable, it is unnecessary to pass upon the assignments

of error containing exceptions to the rulings of the court admitting testimony.

*Judgment reversed. All the Justices concur.*