HUTCHINS *et al. v.* McDOWELL.

No. 15651.   JANUARY 8, 1947.   REHEARING DENIED FEBRUARY 7, 1947.

4

*A. L. Miller* and *Lee Miller Jr.,* for plaintiffs in error.

*A. H. Gray,* contra.

ATKINSON, Justice. (After stating the foregoing facts.) ■ The only special ground of the motion for new trial complains of the charge: "A security deed to land conveys the legal title to the vendee, and the right of the vendee can not be affected by subsequent acts of conveyance of the vendor to third parties. But the vendor has such an equitable interest in the premises as that he may create a valid second security deed, or lien, subject to the paramount right of the original grantee to have all the land appropriated to the payment of the debt." Exception is taken to this instruction, on the ground that "It was not applicable to the evidence in the case, the issues, nor the pleadings in the case."

The above criticism is without merit. Immediately before giving the instruction complained of, the court charged: "If the said Joseph Freeman made and executed to George Foreman a security deed as alleged by the defendants in 1916, soon after making the agreement to treat a straight line from the head of Grimsley's Spring Branch to the east lot line of said lot, and in his security deed described the straight line as being a part of his northern boundary line of his lands, and then subsequently thereafter executed another security deed, as contended by the defendants, to the same identical land, and if this appears to be ascertained from the security deeds themselves, then even though there had not been any agreement at all between the parties as to the 'straight line,' the Federal Land Bank could not have and did not acquire any title to any land north of the said straight line and could not have conveyed a good title to the plaintiff in this case. And if you believe the contention of the defendants in this case, under the rules given you in charge, believe that there had been a continuous, undisputed, agreed line from then on, then you would find in favor of the defendants."

Both the plaintiff and the defendants sought to show the location of the dividing line by reference to descriptions that were set forth in security deeds which were introduced in evidence. In the circumstances, the instruction complained of, which was substantially in the language contained in former decisions of this court dealing with the nature of the title of a grantee in a security deed and the remaining rights of the grantor therein (*Cook* v. *Ga. Fertilizer & Oil Co.,* 154 *Ga.* 41 (2), 113 S. E. 145; *Chason* v. *O'Neal,* 158 *Ga.* 725 (2), 124 S. E. 519), was not harmful error for any reason assigned.

■ The next question is whether the evidence was sufficient to support the verdict for the plaintiff. The uncontroverted evidence showed that the plaintiff's predecessor in title purchased the southern portion of lot 361 in 1914, at which time the defendants' predecessor was the owner of the northern portion of the lot. The defendants contended in their answer that the predecessors of the respective parties, not being able to locate a sawmill road referred to in an old deed, agreed upon a straight line running east from the head of Grimsley's Spring Branch to the east lot line as constituting the dividing line, and that the straight line was acquiesced

in as the dividing line for more than seven years, and was recognized in subsequent deeds. In this connection, the court properly instructed the jury that, if they believed the contention of the defendants that there had been a continuous, undisputed, agreed line from then on, then they should find in favor of the defendants.

"An unascertained or disputed boundary line between coterminous proprietors may be established either (1) by oral agreement, if the agreement be accompanied by actual possession to the agreed line or is otherwise executed; or (2) by acquiescence for seven years, by acts or declarations of owners of adjoining land, as provided by the Code, § 85-1602." Bradley v. Shelton, 189 Ga. 696 (4) (7 S. E. 2d, 261), and cases cited.

In the present case, there was evidence that the boundary line was uncertain and 'unascertained, and that shortly after the purchase by the plaintiff's predecessor in 1914 he and the defendants' predecessor entered into a parol agreement establishing the line at the location now claimed by the defendants, and that the plaintiff's predecessor, in pursuance of this agreement cut timber on his land up to the agreed line, and also in subsequent deeds recognized the agreement. There was also evidence that the agreed line was acquiesced in until 1927, at which time the predecessors of the plaintiff and of the defendants had the line surveyed in accordance with the agreement.

There was conflicting evidence, based on descriptions contained in prior deeds, on the question whether the true dividing line was at the location now claimed by the plaintiff or at the location claimed by the defendants. However, the evidence for the defendants, showing an agreement as to the dividing line between the predecessors of the respective parties, which evidence was not rebutted by any testimony introduced by the plaintiff, the verdict for the plaintiff was unauthorized, and the trial judge erred in not granting a new trial.

It is insisted in the brief of counsel for the plaintiff that the verdict should be upheld, for the reason that the defendants admitted in their answer that the line contended for by the plaintiff was substantially correct until 1927, and therefore since a security deed executed by the plaintiff's predecessor in 1925 described the property by reference to a plat made by H. H. Grimsley, a surveyor, on November 29, 1924 (which plat was introduced in evidence and

shows the line to be at the place contended for by the plaintiff), the plaintiff's predecessor did not have such an interest in the land in 1927 as would authorize him to agree with the defendants' predecessor upon the location of the dividing line.

The admission was stricken from the answer by amendment, and in lieu thereof it was alleged: that in 1914 the predecessors of the respective parties, not being able to locate the old sawmill road referred to in the deed of 1842, agreed that the line separating their lands should run directly east from the branch head; that the plaintiff's predecessor acquiesced in the agreement by thereafter cutting sawmill timber only on the south side of the agreed line, and recognized the agreement by designating the agreed line as the northern boundary of his property in subsequent security deeds; that in 1927 the respective predecessors of the plaintiff and the defendants further recognized their agreement by having a surveyor to run the dividing line east from the branch head in accordance with the dividing line that was agreed upon in 1914; and that the agreed line had been acquiesced in by the respective parties and their predecessors from 1914 until the filing of the present suit.

The admission, having been stricken, can not be availed of by the plaintiff as a solemn admission in judicio, so as to effect an estoppel against the defendants to deny it. *Alabama Midland R. Co.* v. *Guilford,* 114 *Ga.* 627 (40 S. E. 794); *Mims* v. *Jones,* 135 *Ga.* 541 (69 S. E. 824); *Florida Yellow Pine Co.* v. *Flint River Naval Stores Co.,* 140 *Ga.* 321 (2) (78 S. E. 900); *McConnell* v. *Gregory,* 146 *Ga.* 475 (91 S. E. 550). The uncontroverted testimony on behalf of the defendants in support of the allegations of the amended answer demanded a finding that the stricken admission had been satisfactorily explained. Furthermore, the security deed in question described the property, not only with reference to the aforesaid plat, but also by reference to a prior security deed executed January 27, 1916, by Joseph Freeman, the plaintiff's predecessor, to George M. Foreman. The description in the Foreman deed fixes the line as running from the head of the branch "east to the east line of said lot," and the Grimsley plat relied on by the plaintiff is not conclusive as to how the line runs. It shows the mouth and head of Grimsley's Branch as being in lot 361, and the line from the branch head appears to be prolonged in two directions, one running northeasterly to the lot line and the other run-

ning due east to the lot line. In these circumstances, if the line be treated as running from the head of the branch due east, the plat would be consistent with the Foreman deed; and because of the ambiguity in the plat as to the direction of the line from the head of the branch, the line can not be conclusively determined as running in a northeasterly direction to the lot line. Consequently, the plat does not constitute evidence rendering unreasonable or impossible, as contended by the plaintiff, the alleged agreement in 1927 between the respective predecessors of the plaintiff and the defendants.     *Judgment reversed. All the Justices concur.*