22884, 22892.   BRITTAIN et al. v. REID; and vice versa.

ARGUED MARCH 8, 1965—DECIDED APRIL 8, 1965.

796

*William C. Calhoun,* for plaintiffs in error.

*Cohen, Cohen & Slaton, James E. Slaton,* contra.

HEAD, Presiding Justice. ■ Where the owner of a business conveys it and the good will of the business by written contract for a valuable consideration and agrees not to compete with the purchaser, and the agreement is reasonably limited as to territory, it need not be limited as to time. In *Goodman v. Hender-*

*son*, 58 Ga. 567, 569, this court said: "The principle seems to be, that the restraint of trade must be limited in territory, limitation in time not affecting the validity of the contract. It may be forever, and still good." The rule stated in the *Goodman* case has always been the rule in Georgia. *Holmes v. Martin*, 10 Ga. 503; *Seay v. Spratling*, 133 Ga. 27, 29 (65 SE 137); *Orkin Exterminating Co., Inc. of South Georgia v. Dewberry*, 204 Ga. 794, 803 (51 SE2d 669); *Wood v. McKinney*, 205 Ga. 370 (53 SE2d 684). The contention of the defendants (plaintiffs in error in the main bill of exceptions) that the contract of Brittain not to re-enter the taxicab business for a period of 25 years is unreasonable as to time is without merit and can not be sustained.

■ The defendants were bound by the admissions made in their answers under oath, which admissions were neither stricken nor amended. *Cheney v. Selman*, 71 Ga. 384, 387; *Youngblood v. Youngblood*, 74 Ga. 614, 618; *Lydia Pinkham Medicine Co. v. Gibbs*, 108 Ga. 138, 141 (33 SE 945); *Alabama Midland R. Co. v. Guilford*, 114 Ga. 627 (40 SE 794); *Neal Loan & Banking Co. v. Chastain*, 121 Ga. 500 (49 SE 618); *Elliott v. Marshall*, 179 Ga. 639, 641 (4) (176 SE 770); *Hutchins v. McDowell*, 202 Ga. 1, 7 (41 SE2d 300). In *Lydia Pinkham Medicine Co. v. Gibbs*, 108 Ga. 138, 141, supra, it was said that admissions in pleadings, like admissions from the witness stand, are in judicio and can not be withdrawn so as to deprive the other party of the benefit of them.

In her verified answer Lillie Mae Brittain admitted that she had knowledge of the contract between her husband and the plaintiff whereby her husband was not to engage in the taxicab business. Her answer alleged that she operates solely at Fort Gordon under a license granted by the authorities of Fort Gordon "with the exception. of trips initiating from said Post." The verified answers of the defendants and their testimony demanded a finding by the jury that James E. Brittain had engaged in the taxicab business in his wife's name, operating a cab and acting as her agent, and that she had knowledge of his contract and participated with her husband in the violation of his contract.

The testimony of James E. Brittain that he operated one cab

for a limited period of time, with the knowledge and consent of the plaintiff, after the execution of the contract with the plaintiff in which he agreed not to engage in the taxicab business, if true, would not have the effect of vacating the written contract in its entirety. However, this testimony of Brittain was contradicted by the plaintiff, who testified that Brittain drove a cab for him for a short period of time, and that Brittain was in his employ.

In the amended motion for a new trial the defendants except to the charge that "if you believe there has been any collaboration or conspiracy between the defendant, Brittain, and his wife, Lillie Mae Brittain, she also should be enjoined . . ." The charge of the court excepted to was amply authorized by the evidence. Both the defendants' verified answers and the evidence showed collaboration between the defendants, husband and wife, to violate the terms of the husband's contract with the plaintiff.

■ By cross bill of exceptions the plaintiff (defendant in error in the main bill of exceptions) excepts to so much of the judgment of the court as permits the defendants to operate a taxicab business within the confines of Fort Gordon. At the time of the execution of the contract between the plaintiff and the defendant James E. Brittain neither had a license to operate at Fort Gordon, and under the uncontradicted testimony, no taxicab can be operated on the premises of Fort Gordon without a license from the Commanding General.

Under the provisions of Art. I, Sec. 8, Par. 17 of the Constitution of the United States (*Code* § 1-125), the Federal Government may exercise exclusive jurisdiction over all places acquired for forts, arsenals, and other needful buildings. Jurisdiction of lands composing military reservations in this State has been ceded by the State to the Federal Government. *Code* §§ 15-301; 15-302, as amended (Ga. L. 1952, p. 264; Ga. L. 1963, p. 555) and 15-303. In Fort Leavenworth Railroad Co. v. Lowe, 114 U. S. 525, 539 (5 SC 995, 29 LE 264) the Supreme Court said in part: "Where, therefore, lands are acquired in any other way by the United States within the limits of a State than by purchase with her consent, they will hold the lands subject to this qualification:

that if upon them forts, arsenals, or other public buildings are erected for the uses of the general government, such buildings, with their appurtenances, as instrumentalities for the execution of its powers, will be free from any such interference and jurisdiction of the State as would destroy or impair their effective use for the purposes designed." See also Pundt v. Pendleton, 167 Fed. Rep. 997.

In *International Business Machines Corp. v. Evans*, 213 Ga. 333 (99 SE2d 220), Mr. Chief Justice Duckworth, writing the opinion for the court, after holding that private property on military reservations could be taxed, stated (at page 338): "This does not mean that the United States is restricted in the full use of its property, free from any State interference."

The trial judge in not restricting the use of taxicabs by the defendants on the military reservation of Fort Gordon was authorized to take such action since the question of whether or not taxicabs shall be operated at Fort Gordon is for the determination of the Commanding General or other proper military authorities and not the courts of this State.

*Judgment affirmed on both the main bill and the cross bill of exceptions. All the Justices concur, except Duckworth, C. J., and Candler, J., who dissent from the ruling on the cross bill.*

DUCKWORTH, Chief Justice, dissenting. I concur in the judgment on the main bill but dissent from the judgment on the cross bill and the portion of the opinion and headnote on which the judgment is based. I am a firm believer in requiring parties to live up to their agreements and never at any time judicially to permit a party to a contract to violate its plain terms.

I am authorized to state that Mr. Justice Candler concurs in this dissent.