## 48122. HODGES v. YOUMANS et al.

EVANS, Judge. This is the third time this case has appeared in this court. First, the lower court sustained defendant's motion to dismiss plaintiff's complaint, and this court reversed. *Hodges v. Youmans,* 120 Ga. App. 805 (172 SE2d 431). Then two of the defendants filed motions for summary judgment, which were sustained by the lower court and this court reversed, and held that the question of conspiracy and whether defendant's actions were in furtherance of said conspiracy with the other defendants, were questions of fact and "all of these issues should properly be determined by a jury." *Hodges v. Youmans,* 122 Ga. App. 487, 493 (177 SE2d 577).

When the remittitur was returned, all defendants filed motions for summary judgment or the equivalent of motions for summary judgment, that is, some filed motions to dismiss, which actually

were motions for judgment on the pleadings, with evidence considered in connection with said motions. Under Code Ann. § 81A-112 (c) (§ 12, CPA; Ga.L. 1966, pp. 609, 622; 1967, pp. 226, 231; 1968, pp. 1104, 1106; 1972, pp. 689, 692, 693) such a motion is treated as a motion for summary judgment. See also *Kell v. Ga. Power Co.,* 124 Ga. App. 237 (183 SE2d 511). The lower court sustained motions of the defendants and plaintiff appeals for the third time. *Held:*

1. The *law of this case* was fixed and established when this case was before this court at its last appearance here, and same is binding on the lower court and on this court. *Myers v. Johnson,* 116 Ga. App. 232 (156 SE2d 663). Although only two judges of this court concurred in the opinion as to Division 2 in *Hodges v. Youmans,* 122 Ga. App. 487, supra, still that decision is the *law of this case,* although not binding as a precedent in other cases. See *Freeman v. Martin,* 116 Ga. App. 237, 241 (156 SE2d 511).

Among other things, the law of this case, as established in its last appearance, includes the following: ". . . the facts alleged against [Wessels, defendant] him, including those admitted to have been committed by him, were such that a jury could have determined that he acted in furtherance of a conspiracy with the other defendants, and that his conduct was not in good faith. All of these issues should properly be determined by a jury." *Hodges v. Youmans,* 122 Ga. App. 487, supra. Wessels, defendant, is again before this court in the same posture. He has not—could not—change the "facts alleged against him," and although by law he might try to change, or weaken, or soften, the force of some of the admissions he previously made, such changes or withdrawn admissions would still remain as admissions. *Lydia Pinkham Medicine Co. v. Gibbs,* 108 Ga. 138 (1) (33 SE 945); *Alabama Mid. R. Co. v. Guilford,* 114 Ga. 627 (1) (40 SE 794); *Brittain v. Reid,* 220 Ga. 794, 797 (141 SE2d 903). Thus, as was held before, and is now the "law of this case,"—"all of these issues should properly be determined by a jury."

2. The position of the other defendants is practically the same as is the position of Wessels. The question of *conspiracy,* as has been held time and again by the appellate courts of Georgia, is "solely a question for the jury." See *Tanner v. State,* 161 Ga. 193 (11) (130 SE 64); *Weeks v. State,* 66 Ga. App. 553, 556 (18 SE2d 503); *Johnson v. State,* 83 Ga. App. 710 (2c) (64 SE2d 634). And how is a conspiracy proven? The case of *Harris v. State,* 184 Ga. 382, 392 (191 SE 439), spells it out with simplicity and specificity thus:

"Conspiracy may be shown by acts and conduct as well as by direct proof or express agreement. It may be shown by circumstantial evidence. *It may be established by inference, as a deduction from conduct which discloses a common design."* (Emphasis supplied.) See also *Walden v. State,* 121 Ga. App. 142 (1) (173 SE2d 110), and cits. When a conspiracy is alleged, even in criminal cases, the defendant-conspirator cannot remove the question of conspiracy from the jury simply by swearing that he did not conspire. If so, all criminal-defendants would receive a directed verdict of not guilty. The plaintiff (or state) never has a witness who was present with the conspirators when the conspiracy was formulated. Plaintiff simply alleges facts and circumstances which suggest a conspiracy, or which "establish an inference, as a deduction from conduct which discloses a common design" as was held in the *Harris* case, supra. Plaintiff alleged the facts and circumstances in the case sub judice, *and defendants admit the truth of those facts and circumstances,* but simply because they swear they did not conspire, and that they acted in good faith, ergo, they should be allowed to go "home-free." That is not the law of Georgia, and is certainly not "the law of this case."

3. Defendants contend they were acting in *good faith* and that their testimony to such effect removes any issue for determination by the jury. Not so! *Good faith,* like *conspiracy* is always a question for the jury. Even though the party may swear he acted in good faith, the jury may decide he acted in bad faith from consideration of *facts and circumstances* in the case. In *Thompson v. Glover,* 120 Ga. 440 (2) (47 SE 935), it is held: "While on an issue involving 'good faith' a party may testify as to his mental state, the jury are not concluded by what he says in reference thereto, but may test its truthfulness by comparing such claim with *all the circumstances attending the transaction."* (Emphasis supplied.)

In *Hasty v. Wilson,* 223 Ga. 739 (7) (158 SE2d 915), it is held: "A witness may properly testify as to what his *intention* was and although such evidence is not conclusive on the trior of facts, it is to be considered with all the facts and circumstances of the case in determining the real intention of the witness." To the same effect see *Childers v. Ackerman Const. Co.,* 211 Ga. 350, 354 (86 SE2d 227); and *Bowen v. Consolidated Mortg. &c. Co.,* 115 Ga. App. 874, 876 (156 SE2d 168).

4. As to the defendant McNeal, the other county commissioner,

while the record shows that he was not actually named as a party to the litigation brought against plaintiff Hodges in which it was sought to stop Hodges from building the trailer-park, the record also shows that he was in sympathy with the objectors; that neither he nor they wanted the park built; that he inquired of Hodges if he would stop the project if paid his cost, and otherwise interceded for the other defendants. The record shows also that his attitude towards Hodges was arrogant; he voted to revoke Hodges' building permit and voted to deny him a building license. All of this shows sufficient facts of conspiracy and making common cause with the alleged co-conspirators towards furthering their objectives to create a jury question. The jury question is as to whether or not his actions were in good faith in the performance of his official duties, and whether or not his other actions were the result of and in furtherance of the alleged conspiracy. As to his official acts, if they were performed in good faith he would not be liable. But this court in the previous appearance of this case established the law of this case as to Wessels' acts as commissioner. We held that an official is not immune from liability if he is not acting in good faith, or beyond the scope of his duties, or commits acts not authorized by law; or acts maliciously or wantonly with intent to injure the property of another; or where the power of the officer is being manifestly abused to the oppression of the citizen. The rule applies with equal force to Commissioner McNeal, and it is for a jury to determine whether he is liable. He did not negate the essential averments against him in Hodges' tort action. *Saunders v. Vikers,* 116 Ga. App. 733 (2, 3) (158 SE2d 324); *Southern Bell Tel. &c. Co. v. Beaver,* 120 Ga. App. 420 (3) (170 SE2d 737); *Werbin & Tenenbaum v. Heard,* 121 Ga. App. 147 (2) (173 SE2d 114).

5. Two of the defendants herein attempt to absolve themselves from liability by contending that attorney Joseph B. Bergen, who appears as attorney of record for the objectors, had no right to represent them in this litigation or to use their names in the pleadings. This is not an available defense in this court. From a reading of the entire record, including the briefs of counsel, it appears that Attorney Bergen was authorized to represent these two defendants. Under the provisions of Code § 9-604 we must presume, prima facie, that all attorneys are authorized to properly represent any cause in which they appear. Further, as the record does not show that these two defendants raised this point in the lower court, they are in the position of having

acquiesced in such representation there and it would appear that they are estopped to raise the point in this court. See Code § 38-114. There has been no finding by the lower court that he did not have the authority to represent these two defendants. Attorney Joe Bergen is a reputable and respected attorney, and has been a member of the Bar of this court for more than 20 years. We hold against these two defendants in their contention that he was not authorized to represent them.

6. From the allegations in plaintiff's complaint, and from the admissions in the various answers of defendants, there was a community or concert of action among the various defendants to prevent and obstruct plaintiff from building and operating a trailer park. Their conduct included the exerting of political pressure on county commissioners and as a result of which, even though the case was known by Commissioner Wessel to be pending in Superior Court of Chatham County, he issued an illegal and unauthorized stop-work-order, not being in a meeting of the other county commissioners, and without securing the approval of a majority of the other county commissioners; and another county commissioner (McNeal) was transported by one or more defendants to the scene of the trailer park where he sought to induce plaintiff to cease and desist in his plans for building and operating the trailer park; that he used language which plaintiff construed to be coercive language, especially coming from a public officer and county official. Besides these activities, defendants sought to have the county commissioners revoke plaintiff's building permit; and after the trailer park was built, and after failing in an injunctive proceeding in superior court, they sought to prevent the issuance of a license to operate the business.

In oral argument, counsel for defendants urged that plaintiff had the right to wish to build and operate the trailer park, and that defendants had an equal and corresponding right to be against it, and that plaintiff was suing them just because they were against it. But defendants, according to the case as presented, went much further than merely being against it. If they committed the acts as alleged not in good faith, and by reason of a conspiracy, it is a question for a jury to determine as to whether they are liable to plaintiff, and if so, in what amount.

7. Although these defendants will not have to carry the burden of proof on the trial of this case before a jury, in their motions for summary judgment they must carry that burden, and all of the

testimony must be construed most strongly against them. *Hospital Authority of Fulton Co. v. AGN Mfg., Inc.,* 124 Ga. App. 159, 160 (183 SE2d 58); *Burnette Ford, Inc. v. Hayes,* 124 Ga. App. 65 (183 SE2d 78). And no duty devolves on the opposing party to produce rebuttal evidence unless movants first make a prima facie case showing their right to summary judgment; and they must show that right to summary judgment by "undisputed facts [which] show the right of defendant to a judgment with such clarity as to leave no room for controversy, and they should show affirmatively that the plaintiff would not be entitled to recover under any discernible circumstances." *Lockhart v. Walker,* 124 Ga. App. 241 (183 SE2d 503); *Watkins v. Nationwide Mut. Fire Ins. Co.,* 113 Ga. App. 801, 802 (149 SE2d 749).

8. An ancillary ruling here for review involves rulings of the court on protective orders issued sustaining objections to inter-rogatories to the defendants in which information was sought as to the "worldly circumstances of the parties."

The pre-trial interrogatories under attack are these, which plaintiff served on a number of defendants: "1. State your financial worth. 2. State the total amount of securities, stocks, bonds, etc. that you own. 3. State the total amount of real estate that you own. 4. Attach a copy of your present financial net worth statement as well as your earnings for the last twelve months. 5. Please state all other assets that you own."

The trial judge sustained objections to the entire set of interrogatories on grounds of lack of relevance and materiality.

In a tort action, pre-trial interrogatories requiring defendant to enumerate his assets are usually not permitted. 8 Wright & Miller, Federal Practice and Procedure: Civil § 2010 (1970). However, in some jurisdictions such interrogatories are allowed where punitive damages are sought. The rule in Georgia is otherwise. Our punitive damages statute, Code § 105-2002, does not allow the jury to consider defendant's financial worth in computing damages. See, e.g., *Baldwin v. Davis,* 188 Ga. 587 (4 SE2d 458); *Central of Ga. R. Co. v. Almand,* 116 Ga. 780 (43 SE 67); *Kelly v. Adams,* 84 Ga. App. 450 (66 SE2d 144). Only if plaintiff invokes Code § 105-2003, the "vindictive damages" section, is the jury allowed to weigh the defendant's "worldly circumstancs," that is, his wealth; but this section may be invoked only where "the entire injury is to the peace, happiness, or feelings of the plaintiff"—a requirement that case law has left substantially undefined.

In the case at bar plaintiff's prayers for relief indicate that actual and punitive damages are sought on each of 4 counts. His invocation of vindictive damages under Code § 105-2003 is not clear, if it is present at all, but we pass that point for the more important problem of the causes of action which plaintiff alleges. The complaint asserts a vague welter of tort claims against 23 defendants jointly, including personal torts and allegations of injury to property and business interests. This would not appear to be a situation in which the "entire injury" is to his "peace, happiness or feelings." However, for purposes of pre-trial discovery, we need not consider the admissibility at trial of the information sought in these interrogatories; our inquiry concerns relevance. See Coy v. Superior Court of Contra Costa County, 58 Cal. 2d 210 (23 Cal. Rptr. 393, 373 P2d 457, 9 ALR3d 678). Should plaintiff elect to press at trial only a claim properly within Code § 105-2003, then properly drawn interrogatories searching into a defendant's wealth *could* be appropriate and the answers admissible. However, there is a further problem here.

It is of signal importance that this is a suit against multiple defendants. There is seemingly no rule in Georgia concerning the admissibility of evidence of defendants' assets where there are multiple defendants, and there is a conflict among jurisdictions which have considered the question. See Annot., 9 ALR3d 692 (1966). Jurisdictions allowing a separate verdict against each defendant sometimes allow this evidence. Jurisdictions in which the verdict must be joint, frequently disallow it for the reason that a relatively impecunious defendant could suffer joint liability for a verdict of immense proportions because of the wealth of his joint tortfeasors. Id. This would be unfair.

Georgia is primarily a joint-verdict state. Only where the action is for trespass is the jury allowed to apportion damages and render separate verdicts against numerous tortfeasors. Code § 105-2011. In other torts a joint verdict must be rendered and no apportionment is allowed. *Eidson v. Maddox,* 195 Ga. 641, 643 (24 SE2d 895). Code Ann. § 81A-120 did not change this common law rule. *Craven v. Allen,* 118 Ga. App. 462 (164 SE2d 358). Therefore, were plaintiff here to press a trespass claim a separate verdict against each defendant might be possible, but he would no longer be alleging a Code § 105-2003 tort which would allow evidence of defendants' financial worth. Conversely, if he alleged a § 105-2003 tort, the jury could correctly consider the wealth of a sole defendant, but where there are multiple defendants he

would be able to seek only a joint verdict, and therefore evidence of defendants' worth would presumably be inadmissible under the reasoning outlined above.

It seems unlikely, then, that plaintiff will be able to admit the information into evidence; but it is not impossible. Therefore, the lower court erred in summarily sustaining objections to this set of interrogatories on grounds of irrelevance and immateriality, and we remand for a determination of the propriety of each interrogatory in the circumstances. For example, evidence of a defendant's present worth is relevant, but evidence of his past wealth and earnings is not. See Hughes v. Groves, 47 FRD 52 (W.D. Mo. 1969). In addition to other possible problems with interrogatory number 4, the lower court should determine whether so much of the interrogatory as seeks information of past earnings is appropriate.

Should defendants feel their privacy unduly invaded by the necessity for answering, suitable protective orders insuring confidentiality may be sought. However, it should be pointed out that in no event will any of this evidence be admissible unless the plaintiff amends at least one count of his complaint to allege a tort falling within the ambit of Code § 105-2003; to pray for vindictive damages; and to seek damages on that count from no more than one defendant.

*Judgment reversed. Deen, J., concurs, Hall, P. J., concurs in Division 8 and in the judgment.*

ARGUED MAY 7, 1973 — DECIDED JULY 5, 1973 — REHEARING DENIED JULY 26, 1973.

*David H. Fritts,* for appellant.

*George H. Chamlee, Miller, Beckmann & Simpson, A. Martin Kent, Bouhan, Williams & Levy, Frank Seiler, Brannen & Wessels, Perry Brannen, Rogers, Terry & Coolidge, Edgar R. Terry, James W. Head, Anton F. Solms, Jr., Joseph B. Bergen,* for appellees.