## 33210. WEBSTER et al. v. STAR DISTRIBUTING COMPANY, INC.

MARSHALL, Justice.

Garah L. and Jean Webster operate a "One Hour Martinizing" laundry and dry cleaning establishment in Sage Hill Shopping Center in Atlanta, Georgia. They lease this property from Plant Improvement Co., Inc., and

---

there is a restrictive covenant in their lease limiting the use of the premises to professional dry cleaning and commercial laundering but not coin-operated laundering.

Star Distributing Company operates "Star's Great Western Laundromat and Cleaning Center," also located in Sage Hill Shopping Center. They also lease their property from Plant Improvement Co., Inc. A restrictive covenant in Star's lease limits the use of their premises to coin-operated laundering, coin dry cleaning, and budget dry cleaning.

Star Distributing Co. assigned its lease to Richard Guerin in 1973. Approximately one year later, the Websters brought suit to enjoin Guerin from performing services prohibited by the terms of the restrictive covenant in his lease. Holding that under *Rosen v. Wolff,* 152 Ga. 578 (110 SE 877) (1922) and numerous subsequent decisions, the Websters had standing to enforce the terms of the restrictive covenant in Guerin's lease, this court in *Guerin v. Webster,* 233 Ga. 521 (212 SE2d 352) (1975) affirmed the grant of an interlocutory injunction against Guerin. The Websters were subsequently awarded a permanent injunction and damages.

Guerin then reassigned the lease to Star Distributing Co., and Star Distributing began to operate a coin-operated laundry establishment. Star began engaging in a practice known in the trade as "drop-off" laundry, i.e., the customer drops the laundry off with attendants at the coin-operated laundry, the attendants then wash the laundry in the coin-operated machines, the attendants dry and fold the washed laundry, the customer is then presented with the fluff laundry and is charged 25 cents per pound.

The Websters filed the present action for injunctive relief and damages against Star Distributing Co., arguing that this drop-off laundry practice constitutes commercial laundering and is, therefore, prohibited under the terms of Star's lease. After hearing arguments of counsel, the trial court ruled that to enforce the restrictive covenant in this manner would constitute an unreasonable and illegal restraint of trade, and thus the

plaintiffs would not, as a matter of law, be entitled to relief. From the judgment for the defendant, the plaintiffs appeal. *Held:*

The trial court cited no authority for the proposition that enforcement of the restrictive covenant would constitute an unreasonable and illegal restraint of trade. However, for general principles used in determining whether contracts in restraint of trade are valid, see *Brittain v. Reid,* 220 Ga. 794 (141 SE2d 903) (1965); *Clein v. Kapiloff,* 213 Ga. 369 (98 SE2d 897) (1957).

In this appeal, the appellee does not cite any authority to sustain the trial court in its ruling that enforcement of the restrictive covenant would constitute an illegal restraint of trade. Rather, the appellee argues that what it is doing simply is not a violation of the restrictive covenant in its lease.

We are, therefore, presented with two questions: (a) Would enforcement of the restrictive covenant in the manner sought constitute an illegal restraint of trade? If not, (b) has the appellee violated the restrictive covenant in its lease?

(a)  *Rosen v. Wolff* stands for the proposition that an agreement by a lessor ancillary to a leasing of a part of his property, designed to prevent the use of the remainder of his property in a manner competitive with the operation of the lessee's business, is a valid and reasonable restraint of trade. In the present case, the anti-competition agreement between the Websters and Plant Improvement Co. has been effectuated by the restrictive covenant in Star's lease. Therefore, under *Rosen v. Wolff* and its progeny, the most recent of which is *Guerin v. Webster,* enforcement of this restrictive covenant would not be an illegal restraint of trade. Of course, the validity of such restrictive covenants is subject to the overriding requirements that, as to territoriality and/or duration, they be reasonably necessary to protect the interests of the covenantee, that they not impose greater restrictions upon the covenantor than are necessary for the covenantee's protection, and that they not unduly prejudice the interests of the public. See *Brittain v. Reid,* supra, and *Clein v. Kapiloff,* supra, and Anno., 97 ALR2d 4. The restrictive covenant in the appellee's lease is not

unenforceable for any of these reasons.

(b) It remains for decision whether the practice of drop-off laundry constitutes *commercial* laundering (and is therefore prohibited under the appellee's lease) or *coin-operated* laundering (and is therefore allowed).

Where no matter of fact is involved, the construction of a plain and definite contract, if needed, is a matter of law for the court; a contract is not ambiguous, even though difficult to construe, unless and until an application of the pertinent rules of interpretation leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties. *Village Enterprises v. Ga. R. Bank &c. Co.,* 117 Ga. App. 773 (1) (161 SE2d 901) (1968) and cits.

In the present case, it was undisputed that, whenever a customer of the defendant chose to use the "drop-off" laundry service, although the attendant utilized the coin-operated washers and dryers, nevertheless the customer was charged an additional amount for the service of the attendant's putting the laundry into the washer, then the dryer, then folding and replacing the finished, or "fluff," laundry into the customer's container. The touchstone for determining whether or not the appellee is performing services prohibited under the terms of its lease is not the *method* by which those services are performed (i.e., by use of the coin-operated machinery), but rather the *services* themselves which are being offered. The service in question was inconsistent with the defendant's required "budget" type of operation, hence was an infringement on the plaintiffs' full-service, commercial laundry operation which constituted a violation of the defendant's lease as a matter of law.

The judgment of the trial court is therefore reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

*Judgment reversed and remanded. All the Justices concur.*

ARGUED FEBRUARY 13, 1978 — DECIDED APRIL 4, 1978 — REHEARING DENIED APRIL 25, 1978.

*Floyd Siefferman & Associates, Floyd E. Siefferman, Jr.,* for appellants.
*Glenville Haldi,* for appellee.